## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **ROVIO ENTERTAINMENT, LTD.** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **V.** | § | **CASE NO.** _____ |
| | § | |
| | § | |
| **AM WHOLESALE, INC.; ALI RAZA** | § | |
| **RAVJANI; AM1 WHOLESALE, INC.;** | § | |
| **MOHAMMED R. RAVJANI; AMAFHH** | § | |
| **INTERNATIONAL, INC.; AMAFHH** | § | |
| **CENTER, INC.; MOHSIN RAZA** | § | |
| **RAVJANI; ASSURED VENDING, LLC;** | § | |
| **DISCOUNT ARCADE DISTRIBUTING,** | § | |
| **INC.; BG TRADERS, LLC; BANGSHI** | § | |
| **GOPAL SHRESTHA; RMS** | § | |
| **INTERNATIONAL, LLC; ROGHAN** | § | |
| **ETUX SANGITA STHAPIT** a/k/a **ROSHAN** | § | |
| **STHAPIT; D.M. MERCHANTS** | § | |
| **VENTURES, INC.** d/b/a **D. FASHION** and | § | |
| **SALE & MORE; XIAO DONG ZHU;** | § | |
| **YANAGI TRADING, LLC** d/b/a **LADY** | § | |
| **CHARM IMPORT & WHOLESALE** and | § | |
| **LADY'S WORLD; YUANLI TANG; LP 66** | § | |
| **WHOLESALE CENTER, LLC** d/b/a | § | |
| **L'PATRICIA; L'PATRICIA S.M. LLC** | § | |
| d/b/a **L'PATRICIA; SANG SOON LEE** a/k/a | § | |
| **SAM SOON LEE** a/k/a **SANG HA LEE;** | § | |
| **VANIA JEWELRY LLC** d/b/a **SUZIE Q** | § | |
| **USA; MEISHU JIN; MANUEL** | § | |
| **SANDOVAL** d/b/a **MANNY'S PLACE; AND** | § | |
| **DOES 1-50** | § | |
| | § | |
| **Defendants.** | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

Plaintiff Rovio Entertainment, Ltd. ("Plaintiff" or "Rovio") files this Original Complaint against Defendants (hereinafter collectively referred to as "Defendants"), and respectfully alleges as follows:

## I.    NATURE OF THE ACTION

1.    This is an action for copyright infringement arising under the Copyright Laws of the United States, 17 U.S.C. § 101 *et seq.*; for counterfeiting of Plaintiff's Marks in violation of 15 U.S.C. §§ 1114, 1116(d), and 1117(b)-(c); for trademark infringement of Plaintiff's federally registered trademarks in violation of §32 of the Lanham Act, 15 U.S.C. § 1114; and for false designation of origin and unfair competition in violation of Section 43(a) of the Trademark Act of 1946, as amended (15 U.S.C. §1125(a)).    Plaintiff seeks injunctive relief, an accounting, compensatory damages, trebling of the accounting and/or compensatory damages, punitive damages, attorney's fees and costs.

## II.    JURISDICTION AND VENUE

2.    This Court has jurisdiction over the subject matter of this action pursuant to Section 39 of the Lanham Act, 15 U.S.C. § 1121, the Copyright Act of 1976, 17 U.S.C. §501(a); and Chapter 85 of the Judiciary and Judicial Procedure Code, 28 U.S.C. §§1331 and 1338(a) and (b).

3.    Venue is proper, *inter alia*, pursuant to 28 U.S.C. §1391 because Defendants are located in this judicial district and, upon information and belief, a substantial part of the events or omissions giving rise to the claim occurred in this judicial district, and has caused damages to Plaintiff in this district.

4.      Personal jurisdiction exists over Defendants because on information and belief, Defendants are located and conduct business in Texas and in this judicial district, or otherwise avail themselves of the privileges and protections of the laws of the State of Texas, such that this Court's assertion of jurisdiction over Defendants do not offend traditional notions of fair play and due process.

## III.    THE PARTIES

5.      Plaintiff Rovio Entertainment Ltd. fka Rovio Mobile Oy is a private limited liability company organized under Finnish law, having a principal place of business at Keilaranta 17 C, FI-02150 Espoo, Finland.

6.      Upon information and belief, numerous individuals and/or businesses, identified to the extent currently possible in paragraphs 7-29 below (again, collectively, "Defendants"), have, at all relevant times herein, committed the unlawful acts set forth below in paragraphs 52-65, including knowingly and willfully copying, manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, and/or selling counterfeit or infringing Angry Birds products.

7.      Upon information and belief, Defendant AM Wholesale, Inc. (hereinafter, "AM, Inc.") is a Texas corporation, having a principal place of business at 2635 Southwell Road, Dallas, Texas 75229.

8.      Upon information and belief, Defendant Ali Raza Ravjani (hereinafter, "Ali R.") is an individual who is now, and was at the time of the filing of this Complaint and at all intervening times an officer, director, principal, shareholder and/or owner of AM and AM1, Inc., and whose actual name is currently unconfirmed and true address is currently unknown.  Upon information and belief Ali R.'s last known addresses are 2211 Burgundy Drive, Carrollton,

Texas 75006 and 2466 Sir Lovel Lane, Lewisville, Texas 75056.

9.      Upon information and belief, Defendant AM1 Wholesale, Inc. (hereinafter, "AM1, Inc.") is a Texas corporation, having a principal place of business at 2635 Southwell Road, Dallas, Texas 75229.

10.     Upon information and belief, Defendant Mohammed R. Ravjani (hereinafter, "Mohammed R.") is an individual who is now, and was at the time of the filing of this Complaint and at all intervening times an officer, director, principal, shareholder and/or owner of AM1, Inc., and whose actual name is currently unconfirmed and true address is currently unknown other than his previous and current principal places of business at 2526 Joe Field Road, #1, Dallas, Texas 75229 and 2635 Southwell Road, Dallas, Texas 75229, respectively.

11.     Upon information and belief, Defendant Amafhh International, Inc. (hereinafter, "Amafhh, Inc.") is a Texas corporation, having a principal place of business at 2635 Southwell Road, Dallas, Texas 75229.

12.     Upon information and belief, Defendant Amafhh Center, Inc. (hereinafter, "Amafhh C., Inc.") is a Texas corporation, having a principal place of business at 2640 Old Denton Road, Carrollton, Texas 75007.

13.     Upon information and belief, Defendant Mohsin Raza Ravjani (hereinafter, "Mohsin R.") is an individual who is now, and was at the time of the filing of this Complaint and at all intervening times an officer, director, principal, shareholder and/or owner of AM1, Inc., Amafhh, Inc. and Amafhh C., Inc., and whose actual name is currently unconfirmed and true address is currently unknown. Upon information and belief Mohsin R.'s last known addresses are 2211 Burgundy Drive, Carrollton, Texas 75006 and 1160 King Mark Drive, Lewisville, Texas 75056.

14.     Upon information and belief, Defendant Assured Vending, LLC (hereinafter, "Assured") is a Texas limited liability company, having a principal place of business at 5144 SE Loop 820, Fort Worth, Texas 76140.

15.     Upon information and belief, Defendant Discount Arcade Distributing, Inc. (hereinafter, "Discount Arcade") is a Texas corporation, having a principal place of business at 5144 SE Loop 820, Fort Worth, Texas 76140.

16.     Upon information and belief, Defendant BG Traders, LLC (hereinafter, "BG, LLC") is a Texas limited liability company, having a principal place of business at 11422 Harry Hines Boulevard, Suite 106, Dallas, Texas 75229.

17.     Upon information and belief, Defendant Bangshi Gopal Shrestha (hereinafter, "B. Shrestha") is an individual who is now, and was at the time of the filing of this Complaint and at all intervening times an officer, director, principal, shareholder and/or owner of BG, LLC, and whose actual name is currently unconfirmed and true address is currently unknown. Upon information and belief B. Shrestha's last known addresses are 625 Parkway Boulevard, #1323, Coppell, Texas 75019 and 1223 Monterey Blvd., #239, Euless, Texas 76040.

18.     Upon information and belief, Defendant RMS International, LLC (hereinafter, "RMS, LLC") is a Texas limited liability company, having a principal place of business at 10032 Huey Trail, Hurst, Texas 76053.

19.     Upon information and belief, Defendant Roghan Etux Sangita Sthapit a/k/a Roshan Sthapit (hereinafter, "R. Sthapit") is an individual who is now, and was at the time of the filing of this Complaint and at all intervening times an officer, director, principal, shareholder and/or owner of BG, LLC and RMS, LLC, and whose actual name is currently unconfirmed and true address is currently unknown. Upon information and belief R. Sthapit's last known address

is 10032 Huey Trail, Hurst, Texas 76053.

20.     Upon information and belief, Defendant D.M. Merchants Ventures, Inc. d/b/a D. Fashion and Sale & More (hereinafter, "D.M., Inc.") is a Texas corporation, having principal places of business at 11422 Harry Hines Boulevard, #118, Dallas, Texas 75229 and 8136 Spring Valley Road, Suite 100, Dallas, Texas, 75240, respectively, and a registered corporation address of 1701 N. Greenville Avenue, Suite 1125, Richardson, Texas 75081.

21.     Upon information and belief, Defendant Xiao Dong Zhu (hereinafter, "X.D. Zhu") is an individual who is now, and was at the time of the filing of this Complaint and at all intervening times an officer, director, principal, shareholder and/or owner of D.M., Inc., and whose actual name is currently unconfirmed and true address is currently unknown. Upon information and belief X.D. Zhu's last known address is 4009 Norcross Drive, Plano, Texas 75024.

22.     Upon information and belief, Defendant Yanagi Trading, LLC d/b/a Lady Charm Import & Wholesale and Lady's World (hereinafter, "Y.T., LLC") is a Texas limited liability company, having principal places of business at 11422 Harry Hines Boulevard, #121, Dallas, Texas 75229 and 11538 Harry Hines Boulevard, #A1, Dallas, Texas 75229, respectively, and a registered corporation address of 5008 Lookout Trail, Plano, Texas 75023.

23.     Upon information and belief, Defendant Yuanli Tang (hereinafter, "Yuanli T.") is an individual who is now, and was at the time of the filing of this Complaint and at all intervening times an officer, director, principal, shareholder and/or owner of Y.T., LLC, and whose actual name is currently unconfirmed and true address is currently unknown.  Upon information and belief Yuanli T.'s last known address is 5008 Lookout Trail, Plano, Texas 75023.

24.     Upon information and belief, Defendant LP 66 Wholesale Center, LLC d/b/a L'Patricia (hereinafter, "L.P. 66, LLC") is a Texas limited liability company, having principal places of business at 529 W. Rock Island Road, Suite 102, Grand Prairie, Texas 75050.

25.     Upon information and belief, Defendant L'Patricia S.M. LLC d/b/a  L'Patricia (hereinafter, "L.P. S.M., LLC") is a Texas limited liability company, having a principal place of business at 529 W. Rock Island Road, Suite 102, Grand Prairie, Texas 75050.

26.     Upon information and belief, Defendant Sang Soon Lee a/k/a Sam Soon Lee a/k/a Sang Ha Lee (hereinafter, "S.S. Lee") is an individual who is now, and was at the time of the filing of this Complaint and at all intervening times an officer, director, principal, shareholder and/or owner of L.P. 66, LLC and L.P. S.M. LLC, and whose actual name is currently unconfirmed and true address is currently unknown.  Upon information and belief S.S. Lee's last known address is 355 E. Las Colinas Boulevard, Suite 216, Dallas, Texas 75234.

27.     Upon information and belief, Defendant Vania Jewelry LLC d/b/a  Suzie Q USA (hereinafter, "V.J., LLC") is a Texas limited liability company, having a principal place of business at 11447 Harry Hines Boulevard, Suite 103, Dallas, Texas 75229.

28.     Upon information and belief, Defendant Meishu Jin (hereinafter, "M. Jin") is an individual who is now, and was at the time of the filing of this Complaint and at all intervening times an officer, director, principal, shareholder and/or owner of V.J., LLC, and whose last known address is 7906 Whispering Tree Lane, Plano, Texas 75024.

29.     Upon information and belief, Defendant Manuel Sandoval d/b/a Manny's Place (hereinafter, "M. Sandoval") is an individual, having a principal place of business at 812 East Amarillo Boulevard, Amarillo, Texas 79107, and residing at 1015 Sunrise Drive, Amarillo, Texas 79104.

30.     AM, Inc.; AM1, Inc.; Amafhh, Inc.; Amafhh C., Inc.; Assured; Discount Arcade; BG, LLC; RMS, LLC; D.M., Inc.; Y.T., LLC; L.P. 66, LLC; L.P. S.M., LLC; and V.J., LLC are hereinafter individually and collectively referred to as "Corporate Defendants."

31.     Ali R.; Mohammed R.; Mohsin R.; B. Shrestha; R. Sthapit; X.D. Zhu; Yuanli T; S.S. Lee; M. Jin; and M. Sandoval are hereinafter individually and collectively referred to as "Individual Defendants."

32.     "Corporate Defendants" and "Individual Defendants" are hereinafter collectively referred to as "Defendants."

33.     Upon information and belief, and at all times relevant hereto, Individual Defendants were officers, directors, principals, shareholders and/or owners of Corporate Defendants as described above in paragraphs 7-29 and the acts of Individual Defendants, as alleged herein, were performed within the course and scope of such position.   Defendants enriched themselves by fraudulent and illegal conduct as alleged herein, while Plaintiff suffered enormous financial injury.

34.      Upon information and belief, adherence to the fiction of the existence of Individual Defendants as separate and distinct from Corporate Defendants would permit an abuse of corporate privilege and would permit an injustice in that Individual Defendants would succeed in avoiding legally incurred liabilities while maintaining the benefits of the corporate status.

35.     Upon information and belief since the time of its creation, now, and all times relevant to this Complaint such a unity of interest and ownership existed between Individual Defendants and Corporate Defendants, such that separate personalities did not and do not in reality exist.

36.     Upon information and belief, Does 1-50 are either corporations, limited liability

companies, individuals or other entities who are residents of or present in this judicial district and are subject to the jurisdiction of this Court. Upon information and belief, Does 1-50 are officers, directors, principals, shareholders and/or owners of Defendants, suppliers of Defendants, or other entities or individuals copying, manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, and/or selling counterfeit or infringing Angry Birds products, or otherwise violating Plaintiff's intellectual property rights in this judicial district. The identities of the various Doe defendants are unknown to Plaintiff at this time. The Complaint will be amended to include the names of such individuals when identified.

## IV. COMMON FACTUAL ALLEGATIONS

### i. Plaintiff Rovio and its Well-Known Angry Birds Game and Licensed Products

37. Rovio is entertainment media company established in 2003 and is the creator of the globally successful Angry Birds franchise. "Angry Birds" is a puzzle video game first released in December 2009 for Apple iOS which became an international phenomenon within a few months of its release.

38. In the game, players use a slingshot to launch birds at pigs stationed on or within various structures, with the intent of destroying all the pigs on the playfield. As players advance through the game, new birds appear, some with special abilities that can be activated by the player. Since its release, Rovio has supported Angry Birds with numerous free updates that add additional game content as well as releasing multiple new versions of the game for multiple platforms.

39. To date, the Angry Birds games have been downloaded over 250 billion times (250,000,000,000) across all platforms, including both regular and special editions (i.e. Classic, Seasons, Rio, Space, Star Wars, etc.), and over one billion (1,000,000,000) in 2012 alone. Angry

Birds is now the number one paid app of all time.

40.    There are approximately 40 million monthly active users across all platforms. Players log more than 1 million hours of game time each day on the iOS version of the Angry Birds game and 3.33 million hours per day across all platforms.

41.    In addition, Rovio has won multiple awards for various versions of the Angry Birds games.  In February 2010, Angry Birds was a nominee for the "Best Casual Game" award at the 6th annual International Mobile Gaming Awards in Barcelona, Spain.  In June of 2010, Macworld named Angry Birds as the winner of the 2010 Macworld Award for Best iPhone Entertainment & Lifestyle App.  In July 2012, Angry Birds won Best New Download IP award at the Develop Awards in Brighton.  In September 2010, IGN named Angry Birds as the fourth best iPhone game of all time.  In April 2011, Angry Birds won both the "Best Game App" and "App of the Year" at the UK Appy Awards.  At the 15th edition of the Webby Awards, Angry Birds was awarded "Best Game for Handheld Devices." In April 2012, Angry Birds again won the "Best Game App" award at the Appy Awards.

42.    Rovio and its Angry Birds franchise have received widespread press and media coverage for the past four years.  News stories, reports, reviews, features, press releases and blog posts have appeared in worldwide print and online publications such as: USAToday, TIME, The New York Times, The Washington Post, Forbes, The Los Angeles Times, The Chicago Tribune, The Associated Press, Reuters, and the Huffington Post, among many others.

43.    The popularity of the Angry Birds games led to an expansion of Angry Birds franchise to other business areas including, but not limited to: the development and sale of merchandise featuring its characters, the launch of the ToonsTV channel, Rovio's video entertainment platform for the mobile generation airing the Angry Birds Toons television series,

which surpassed more than 1,000,000,000 views in its first seven months since its release in March, 2013; and plans for a feature film which is due to be released in July of 2016.

44.     Rovio has created several key strategic partnerships with over 500 licensees worldwide to develop an extensive and successful global licensing program for merchandise featuring its characters which include innovative product lines across multiple consumer products categories ("Authentic Products").

45.     In February of 2011,  Rovio Entertainment won  "Property of the Year" for Angry Birds and "Game of the Year" for Mattel's board game "Angry Birds: Knock on Wood" at Toy of the Year Awards. In June of 2012, the International Licensing Industry Merchandisers' Association (LIMA) selected Angry Birds as the 'Overall Best Licensed Program of the Year' and the 'Best Character/ Toy Brand Program of the Year' award in the Character/ Toy Brand segment.   One of Rovio's licensee's, Commonwealth Toy & Novelty Co. was also awarded 'Best Character/ Toy Brand Licensee of the Year- Hard Goods' for Angry Birds toys.

46.     While Plaintiff has gained significant common law trademark and other rights in its trademarks and Products through its use, advertising and promotion, Plaintiff has also protected its valuable rights by filing for and obtaining federal trademark and copyright registrations.

47.     Plaintiff is the owner of registered trademarks, including but not limited to: U.S. Trademark Registration Nos. 4,200,545, 4,148,716, and 3,976,576 for "ANGRY BIRDS" for a wide variety of goods in Classes 3, 9, 14, 16, 18, 20, 21, 24, 25, 27, 28, 29, 30, 32, 33, 34, 35, 36, 38, 41 and 43, and U.S. Trademark Registration Nos. 4,252,003, 4,145,113 and 3,988,064 for  for a wide variety of goods in Classes 3, 9, 14, 16, 18, 20, 21, 24, 25, 27, 28, 29, 30, 32, 33, 34, 35, 36, 38, 41 and 43 (collectively, "Marks").  A true and correct copy of the registrations for

the Marks are attached hereto as **Exhibit A** and incorporated herein by reference.

48.    Plaintiff also owns copyrights in and related to the Products. Plaintiff's copyrights protect the various proprietary characters originated in the game and extended through its line of Products.  The line is updated from time to time to add new designs and products.

49.    Plaintiff owns several United States Copyright Registrations relating to its products. For example, Plaintiff owns the following relevant certificates of registration: VA1794919, VA1769078, VA1769080, VA1776992, VA1776995, VA1777195, VA1778702, VA1778703, and VA1778705 as well as numerous common law copyrights (hereinafter collectively referred to as the "Copyright Works").   True and correct copies of the foregoing certificates of registration are collectively attached hereto as **Exhibit B** and incorporated herein by reference.

50.    Rovio has gone to great lengths to protect its interests in and to the Marks and Copyright Works.  No one other than Rovio and its licensees are authorized to manufacture, import, export, advertise, offer for sale, or sell any goods utilizing the Marks or Copyright Works without the express written permission of Rovio.

51.    As a result of Plaintiff's efforts, the quality of its Products, its promotions, extensive press and media coverage, and word of mouth buzz, Plaintiff's Marks and Authentic Products have become prominently placed in the minds of the public.  Members of the public have become familiar with Plaintiff's Marks and Authentic Products, and have come to recognize the Marks and Authentic Products and associate them exclusively with Plaintiff. Plaintiff has acquired a valuable reputation and goodwill among the public as a result of such association. Indeed, the Mark and Products are famous in the United States, among other countries.

ii.   **Defendants' Wrongful and Infringing Conduct**

52.    Particularly in light of the success of Plaintiff and Plaintiff's games and Products, as well as the reputation they have gained, Plaintiff and its Products have become targets for unscrupulous individuals and entities who wish to capitalize on the goodwill, reputation and fame that Plaintiff has amassed in its Marks and Authentic Products, and the works embodied in its Copyright Works.

53.    Plaintiff investigates and enforces against such activity, and through such efforts, learned of Defendants' actions which vary and include copying, manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, and/or selling products bearing one or more of Plaintiff's ANGRY BIRDS and/or  Marks and/or Copyright Works and/or products that contain labels and/or hang tags bearing Plaintiff's ANGRY BIRDS and/or  Marks and/or Copyright Works related to Plaintiff's Marks and Copyright Works (collectively, "Infringing Products")

54.    Many of the Defendants sold Infringing Products to investigators hired by Plaintiff's counsel.  The investigator photographed the Infringing Products.  True and correct copies of photographs of a sample of the Infringing Products purchased by investigators which were hired by Plaintiff's counsel are attached hereto as **Exhibit C** and incorporated herein by reference.

55.    The products purchased from Defendants by investigators which were hired by Plaintiff's counsel are counterfeit and infringe Plaintiff's Marks and Copyright Works.

56.    The San Antonio Police Department ("SAPD") seized Infringing Products from many Defendants.  Investigators hired by Plaintiff's counsel photographed the Infringing Products at the SAPD precinct.  True and correct copies of photographs of a sample of the

Infringing Products seized by SAPD are attached hereto as **Exhibit C** and incorporated herein by reference.

57.     The products seized by SAPD are counterfeit and infringe Plaintiff's Marks and Copyright Works.

58.     In some instances, Defendants voluntarily surrendered Infringing Products to investigators hired by Plaintiff's counsel.   The investigators photographed the Infringing Products that were voluntarily surrendered.   True and correct copies of photographs of a sample of the Infringing Products voluntarily surrendered to investigators hired by Plaintiff's counsel are attached hereto as **Exhibit C** and incorporated herein by reference.

59.     The products voluntarily surrendered by Defendants to investigators hired by Plaintiff's counsel are counterfeit and infringe Plaintiff's Marks and Copyright Works.

60.     Defendants are not, and never have been, authorized retailers of Authentic Products.   Neither Plaintiff nor any authorized agents of Plaintiff have consented to Defendants' use of Plaintiff's Marks or Copyright Works, nor have they consented to Defendants' use of any confusingly similar marks by Defendants.   Plaintiff has never authorized Defendants to copy, use, manufacture, import, export, advertise, market, promote, distribute, display, offer for sale or sell any of its Copyright Works or products bearing its Marks and/or Copyright Works.

61.     By the aforementioned sales of Infringing Products, and upon information and belief, by Defendants' other dealings in Infringing Products (including manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, retailing, offering for sale, and/or selling), Defendants have violated Plaintiff's exclusive rights in its Marks and Copyright Works, and have used images and designs that are substantially similar to, identical to, and/or constitute counterfeiting and/or infringement of Plaintiff's Marks and

Copyright Works to confuse consumers and aid in the promotion and sales of their Infringing Products. Defendants' conduct and use began long after Plaintiff's adoption and use of its Marks and Copyright Works.

62.     Prior to and contemporaneous with their actions alleged herein, Defendants had knowledge of Plaintiff's ownership of its Marks and Copyright Works, and the extraordinary fame and strength of the Angry Birds brands and Marks, and the incalculable goodwill associated therewith, and in bad faith adopted the Marks and Copyright Works.

63.     Defendants have been engaging in the illegal counterfeiting and infringing actions alleged herein knowingly and intentionally, or with reckless disregard or willful blindness to Rovio's rights, or in bad faith, for the purpose of trading on the goodwill and reputation of the Angry Birds brands, Authentic Products and Marks.

64.     Defendants illegal counterfeiting and infringing actions as alleged herein will cause confusion, mistake, or deception by consumers, the public, and the trade with respect to the source or origin of Defendants' Infringing Products, and cause consumers to erroneously believe that such Infringing Products are licensed by or otherwise associated with Rovio, thereby damaging Rovio.

65.     In committing these acts, Defendants have, among other things, willfully and in bad faith committed the following, all of which has and will continue to cause irreparable harm to Plaintiff: infringed Plaintiff's Copyright Works; counterfeited Plaintiff's Authentic Products; infringed Plaintiff's Marks; committed unfair competition; and unfairly profited from such activity at Plaintiff's expense. Unless enjoined, Defendants will continue to cause irreparable harm to Plaintiff.

## V.   CAUSES OF ACTION

FIRST CAUSE OF ACTION

### Federal Copyright Infringement
### [17 U.S.C. §501(a)]

66.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs.

67.     Plaintiff is the exclusive owner of copyrights in and related to its Authentic Products and related products, and possesses copyright registrations with the United States Copyright Office relating to the Copyright Works.

68.     Defendants have actual notice of Plaintiff's exclusive copyright rights in the Copyright Works.

69.     Defendants did not seek and failed to obtain Plaintiff's consent or authorization to use, manufacture, reproduce, copy, display, prepare derivative works, distribute, sell, transfer, rent, perform, and/or market Plaintiff's Authentic Products.

70.     Without permission, Defendants intentionally and knowingly reproduced, copied, displayed, and/or manufactured Plaintiff's Copyright Works and or Infringing Products bearing Plaintiff's Copyright Works by manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, retailing, offering for sale or selling Infringing Products which are, at a minimum, substantially similar to Plaintiff's Copyright Works.

71.     Defendants' acts, as alleged herein, constitute infringement of Plaintiffs' Copyright Works, including Plaintiff's exclusive rights to reproduce, distribute and/or sell such protected material.

72.     Defendants' knowing and intentional copyright infringement as alleged herein has caused and will continue to cause substantial and irreparable harm to Plaintiff, and has and will

continue to cause damage to Plaintiff.  Plaintiff is therefore entitled to injunctive relief, damages, Defendants' profits, increased damages, and reasonable attorney's fees and costs.

SECOND CAUSE OF ACTION

**Trademark Counterfeiting Under Sections 32, 34, and 35 of the Lanham Act,**
**[15 U.S.C. §§ 1114(1)(b), 1116(d), and 1117(b)-(c)]**

73.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs.

74.     Plaintiff's Marks and the goodwill of the businesses associated with them in the United States are of great and incalculable value, are highly distinctive, and have become universally associated in the public mind with Authentic Products and related services of the highest quality and reputation finding their source from Rovio.

75.     Without Plaintiff's authorization or consent, and having knowledge of both Plaintiff's well-known and prior rights in Plaintiff's Marks and the fact that Defendants' Infringing Products bear marks which are intentionally identical to, or imitations of, Plaintiff's Marks, Defendants have manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, retailed, offered for sale and/or sold Infringing Products to the consuming public in direct competition with Plaintiff, in or affecting interstate commerce.

76.     Defendants' Infringing Products reproduce, counterfeit, copy, and colorably imitate Plaintiff's Marks or display spurious designations that are identical with, or substantially indistinguishable from, Plaintiff's Marks.

77.     Defendants have applied their reproductions, counterfeits, copies, and colorable imitations to labels, point-of-purchase images, and advertisements intended to be used in commerce upon or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, retailing, offering for sale, and/or selling of

Defendant's Infringing Products, which is likely to cause confusion, cause mistake, and deception among the general purchasing public as to the origin of the Infringing Products, and is likely to deceive the public into believing the Infringing Products being sold by Defendants originate from, are associated with, or are otherwise authorized by, Rovio.

78.     Defendants' unauthorized use of Plaintiff's Marks on or in connection with the Infringing Products was done with notice and full knowledge that such use was not authorized or licensed by Plaintiff.  Defendants' actions constitute willful counterfeiting of Plaintiff's Marks in violation of 15 U.S.C. §§ 1114, 1116(d), and 1117(b)-(c).

79.     As a direct and proximate result of Defendants' conduct, Plaintiff has suffered damage to its valuable Marks and other damages in an amount to be proved at trial.

80.     Plaintiffs do not have an adequate remedy at law, and will continue to be damaged by Defendants' manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, retailing, offering for sale, and/or selling of Infringing Products unless this Court enjoins Defendants from such activities.

THIRD CAUSE OF ACTION

**Infringement of Registered Trademarks**
**[115 U.S.C. §1114/Lanham Act §32(a)]**

81.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs.

82.     Plaintiff has continuously used its Marks in interstate commerce since at least as early as 2010.

83.     Plaintiff, as the owner of all right, title and interest in and to its Marks, has standing to maintain an action for trademark infringement under the Trademark Statute 15 U.S.C. §1114.

84.    Defendants are now, and were, at the time of their actions complained of herein, aware that Plaintiff is the registered trademark owner of the Marks.

85.    Defendants did not attempt, and failed to obtain the consent or authorization of Plaintiff as the registered trademark owner of the Marks, to deal in and commercially manufacture, import, export, advertise, market, promote, distribute, display, retail, offer for sale, and/or sell Authentic Products and related products bearing Marks into the stream of commerce.

86.    Defendants intentionally and knowingly reproduced, copied, and colorably imitated Plaintiff's Marks and applied such reproductions, copies, or colorable imitations to labels, signs, prints, packages, wrappers, receptacles and/or advertisements intended to be used in commerce or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, retailing, offering for sale, and/or sale of Defendants' Infringing Products.

87.    Defendants thereupon have manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, retailed, offered for sale and/or sold Infringing Products bearing Plaintiff's Marks.

88.    Defendants' egregious and intentional use of Plaintiff's Marks in commerce and Defendants' sale of items bearing Plaintiff's Marks has caused actual confusion and is likely to continue to cause further confusion, to cause mistake, and to deceive, among the general purchasing public as to the origin of the Infringing Products, and is likely to deceive the public into believing that Defendants' Infringing Products are Plaintiff's Authentic Products, or are otherwise associated with, or authorized by, Rovio.

89.    Defendants' acts have been committed with in bad faith and with knowledge of Plaintiffs' exclusive rights and goodwill in the Marks, and with the intent of causing confusion,

mistake and to deceive.

90.     Plaintiffs have suffered and will continue to suffer substantial and irreparable injury, loss and damage to its rights in and to the Marks and the goodwill associated therewith, for which it has no adequate remedy at law; thus Plaintiffs requests injunctive relief.

91.     Defendants' continued and knowing use of Plaintiff's Marks without Plaintiff's consent or authorization constitutes intentional infringement of Plaintiff's federally registered trademarks in violation of §32 of the Lanham Act, 15 U.S.C. § 1114.  Based on such conduct, Plaintiff is entitled to injunctive relief as well as monetary damages, and other remedies provided by § 1116, 1117, and 1118, including Defendants' profits, treble damages, reasonable attorneys' fees, costs and prejudgment interest.

FORTH CAUSE OF ACTION

**False Designation of Origin, Passing Off & Unfair Competition
[15 U.S.C. §1125(a)/Lanham Act §43(a)]**

92.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs.

93.     Plaintiff has standing to maintain an action for false designation of origin and unfair competition under the Federal Trademark Statute, Lanham Act §43(a) (15 U.S.C. §1125).

94.     Defendants have, without authorization, on or in connection with their Infringing Products, made false designations of origin which are likely to cause confusion, cause mistake and to deceive as to the affiliation, connection or association of Defendants' Infringing Products with Plaintiff, and/or as to the origin, sponsorship or approval of Defendants' Infringing Products and commercial activities by Plaintiff.

95.     Defendants' knowingly and willfully used in commerce product designs that are confusingly similar to and constitute a reproduction of Plaintiff's Copyrighted Works and used

Plaintiffs' Marks on or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, retailing, offering for sale, and/or sale of Infringing Products with the intent to cause confusion, cause mistake and to deceive the purchasing public and in blatant disregard of Plaintiff's rights.

96.     Defendants' unlawful, unauthorized, and unlicensed manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, retailing, offering for sale, and/or selling of Infringing Products conduct violates the Lanham Act, and creates express and implied misrepresentations that Defendants' Infringing Products were created, authorized, sanctioned, or approved by Plaintiff, thereby creating a likelihood of confusion by consumers as to the source of such Infringing Products, and allowing Defendants' to capitalize on the goodwill associated with, and the consumer recognition of, Plaintiff's Marks and brands, to Defendants' substantial profit.

97.     Defendants' have created a false designation of origin (passing off), and is unfairly competing with Plaintiff, in violation of §43(a) of the Lanham Act, 15 U.S.C. §1125(a), and is causing substantial and irreparable injury to Plaintiff's goodwill and reputation, for which it has no adequate remedy at law, and if not enjoined, will continue to cause substantial and irreparable injury to Plaintiff and to the purchasing public.

98.     As a direct and proximate result of Defendants' wrongful conduct, as alleged herein, Plaintiff has been and will be deprived of sales of its Authentic Products in an amount as yet unknown but to be determined at trial, and has been deprived and will be deprived of the value of its Marks as commercial assets in an amount as yet unknown but to be determined at trial. Plaintiff seeks an accounting of Defendants' profits and requests that the Court grant Plaintiff three times that amount in the Court's discretion.

99.     Based on Defendants' wrongful conduct, Plaintiff is entitled to injunctive relief as well as monetary damages, and other remedies as provided by the Lanham Act, including Defendants' profits, treble damages, reasonable attorneys' fees, costs and prejudgment interest.

## VI.   <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff prays for judgment against Defendants, inclusive, and each of them, as follows:

A.     For an award of Defendants' profits and order that Plaintiff recover Defendants' illicit profits and damages arising out of the acts of deception and infringement described above, and a sum equal to three times such profits or damages (whichever is greater), pursuant to 15 U.S.C. § 1117(a) and (b);

B.     For an award of statutory damages of $2 million per counterfeit mark per type of goods or services sold, offered for sale, or distributed, pursuant to 15 U.S.C. § 1117(d).

C.     For an award of Defendants' profits and Plaintiff's damages in an amount to be proven at trial for trademark infringement under federally registered trademarks in violation of §32 of the Lanham Act, 15 U.S.C. § 1114;

D.     For an award of Defendants' profits and Plaintiff's damages in an amount to be proven at trial for copyright infringement under 17 U.S.C. §501(a);

E.     In the alternative to actual damages and Defendants' profits pursuant to 17 U.S.C. §504(b), for statutory damages pursuant to 17 USC §504(c), which election Plaintiff will make prior to the rendering of final judgment;

F.     For an award of Defendants' profits and Plaintiffs' damages in an amount to be proven at trial for false designation of origin and unfair competition under 15 U.S.C. §1125(a);

G.     For preliminary and permanent injunctions by this Court prohibiting Defendants

from engaging or continuing to engage in the unlawful, unfair, and/or fraudulent business acts or practices described herein, including (1) manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or dealing in any Infringing Products or any products which are confusingly or substantially similar to the Authentic Products or may otherwise violate Plaintiff's Marks or Copyright Works, or proprietary rights in the Authentic Products; (2) the unauthorized use of any Marks, Copyright Works or other intellectual property right of Plaintiff; (3) acts of trademark and/or copyright infringement; (4) acts of unfair competition; and (5) any other acts in derogation of Plaintiff's rights.

H.      For an order from the Court requiring that Defendants provide complete accountings, and for equitable relief, including that Defendants (1) disgorge and return or otherwise pay to Plaintiff their ill-gotten gains obtained from the illegal acts and transactions alleged herein; and/or (2) pay restitution to Plaintiff, including the amount of monies that should have been paid if Defendants' complied with their legal obligations, or as equity otherwise requires.

I.      For an order from the Court that an asset freeze or constructive trust be imposed over all monies and profits in Defendants' possession which rightfully belong to Plaintiff.

J.      For destruction of the Infringing Products in Defendants' possession or under their control pursuant to 17 U.S.C. §503.

K.      For an award of exemplary or punitive damages in an amount to be determined by the Court.

L.      For Plaintiff's reasonable attorney's fees and investigator's fees.

M.      For all costs of suit.

N.      For such other and further relief as the Court may deem just and equitable.


Dated: November 27, 2013.

                                        Respectfully submitted,

                                        BY:    /s/ Steven M. Abbott
                                              Steven M. Abbott
                                              State Bar No. 00797825
                                        2727 Allen Parkway, Suite 1675
                                        Houston, Texas 77019
                                        Telephone: (713) 467-1669
                                        Facsimile: (713) 467-4936
                                        E-mail: abbottsteven@hotmail.com

                                        *Attorney-in-charge for Plaintiff*
                                        *Rovio Entertainment, Ltd.*

OF COUNSEL:

Dean M. Fuller
State Bar No. 07516550
*Local counsel for Plaintiff*
*Rovio Entertainment, Ltd.*
Two Galleria Tower
13455 Noel Road, Suite 2150
Dallas, Texas 75240
Telephone: (972) 716-3838
Facsimile: (972) 991-5150
E-mail: deanfuller@fullerlaw.net

**EPSTEIN DRANGEL LLP**
60 East 42nd Street, Suite 2410
New York, NY 10165
Telephone: (212) 292-5390
Facsimile: (212) 292-5391

Jason M. Drangel
NY State Bar No. 2538981
Federal Bar No. JD 7204
E-mail: jdrangel@ipcounselors.com

Ashly E. Sands
NY State Bar No. 5079371
Federal Bar No. AS 7715
E-mail: asands@ipcounselors.com

*Attorneys for Plaintiff*
*Rovio Entertainment, Ltd.*