IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ROVIO ENTERTAINMENT LTD., | § | |
| | § | |
| | § | |
| *Plaintiff*, | § | |
| v. | § | Case No.: 3:13-cv-04719-G |
| | § | |
| AM WHOLESALE INC., *et al*, | § | |
| | § | |
| | § | |
| *Defendants*. | § | |

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

**TO THE HONORABLE U.S. DISTRICT JUDGE:**

NOW COME, AM WHOLESALE, INC., ALI RAZA RAVJANI, AMAFHH INTERNATIONAL, INC., AMAFHH CENTER, INC. and MOHSIN RAZA RAVJANI, Defendants, and file this their Brief in Support of Defendants' Motion to Dismiss and would show the Court as follows:

**I.     Introduction**

Rovio Entertainment Ltd. (hereinafter "Plaintiff") filed its Original Complaint on November 27, 2013, against, *inter alia*, AM Wholesale, Inc., Ali Raza Ravjani, AMAFHH International, Inc., AMAFHH Center, Inc. and Mohsin Raza Ravjani (hereafter collectively "Defendants") alleging copyright infringement, trademark counterfeiting, infringement of Plaintiff's federally registered trademarks, false designation of origin and unfair competition.

In the lawsuit against Defendants, Plaintiff asserts the following federally registered trademark registrations: U.S. Reg. Nos.: 4,200,545, 4,148,716, 3,976,576, 4,252,003, 4,145,113, 3,988,064 (collectively hereinafter "Trademark Registrations") for a wide variety of goods and

services in Classes 3, 9, 14, 16, 18, 20, 21, 24, 25, 27, 28, 29, 30, 32, 33, 34, 35, 36, 38, 41 and 43. (*See* Plaintiff's Original Complaint, Pg. 11).

Plaintiff is a company organized under Finnish law, having its principal place of business at Espoo, Finland. (*See* Plaintiff's Original Complaint, Pg. 3). Plaintiff obtained from the United States Patent & Trademark Office (hereinafter "USPTO) the '545, '576, '003 and '064 federal registrations through a "Request for Extension of Protection in the United States" pursuant to the Madrid Protocol (a treaty entitled "the Madrid System of the International Registration of Trademarks"), said treaty codified, in part, under § 66A of the Lanham Act. (*See* Exhibit A attached hereto). Furthermore, the Plaintiff obtained the '716 and '113 federal registrations pursuant to the Paris Convention (a treaty entitled "the Paris Convention for the Protection of Industrial Property"), said treaty codified, in part, under § 44 of the Lanham Act. (*See* Exhibit B attached hereto).

Because Plaintiff's obtained the trademark registrations through §§ 66A and/or 44(e) of the Lanham Act, Plaintiff, unlike domestic trademark applicants, did not have to present evidence to the USPTO that it was using the mark in U.S. commerce in connection with the goods and services listed in its applications for the USPTO to grant the registrations. *See* 15 U.S.C. § 1141h(a)(3); *see* also *Crocker Nat'l Bank v. Canadian Imperial Bank of Commerce*, 223 U.S.P.Q. 909 (T.T.A.B. 1984). *Accord Lane Ltd. v. Jackson Int'l Trading Co.*, 33 U.S.P.Q.2d 1351 (T.T.A.B. 1994) ("An applicant under Section 44 of the Lanham Act need not have used the applied-for mark anywhere in the world prior to filing"). Instead, Plaintiff only had to certify to the USPTO that it has a bona fide intent to use the mark in U.S. commerce with all the listed goods and services. *See* 15 U.S.C. §1141f.

In its trademark registrations, Plaintiff lists hundreds and hundreds of goods and services, a staggering and unbelievable amount. So unbelievable, in fact, that Plaintiff could not have had the requisite bona fide intent as required by U.S. law. Moreover in its complaint, Plaintiff does not allege that it is using its marks in U.S. commerce in connection with the goods and services listed in its trademark registrations.

### I.   Argument and Authority

"Ownership of trademarks is established by use, not by registration." *Action Ink, Inc. v. Anheuser-Busch, Inc.*, 959 F.Supp.2d 934 (E.D.La. 2013) (quoting *Union Nat'l Bank of Texas, Laredo, Tex. v. Union Nat'l Bank of Texas, Austin, Tex.*, 909 F.2d 839, 842 (5th Cir. 1990). For an entity to acquire a legal right to a trademark (i.e., to become a trademark owner), it must use the mark to designate goods and services in commerce. *Seybert v. Nat'l Ctr. For Missing & Exploited Children*, 2009 WL 3756607 (E.D.Tex. 2009).

Mere adoption of a mark without bona fide use, in an attempt to reserve it for the future, will not create any trademark rights. *Blue Bell, Inc. v. Farah Mfg. Co., Inc.*, 508 F.2d 1260, 1264-65 (5th Cir. 1975). "The continuing validity of a [trademark registration] is dependent on use." *Modern Group v. Tiger Envtl. & Rental Servs.*, 640 F. Supp. 2d 820, 825 (W.D.La. 2009). "The right to a particular mark grows out of its use, not its mere adoption." *United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90, 97 (1918).

"While §44(e) applicants are excused from the requirement that the mark be in use prior to registration, they must nonetheless state that they have (and must in fact posses) an intent to use the mark in U.S. commerce." *L'Oreal S.A. v. Marcon*, 2012 WL 1267956 *4, n12 (TTAB 2012). The application for a U.S. trademark application – whether it is a foreign or a domestic applicant – must have a bona fide intent to use the mark in U.S. commerce on **all** listed goods

and services. 15 U.S.C. § 1051(b)(3)(B); 15 U.S.C. § 1126(d)(2); 15 U.S.C. § 1126(e). (emphasis added).

Foreign companies who avail themselves to the Madrid Protocol (by filing a trademark application in the USPTO under § 66A of the Lanham Act) or to the Paris Convention (by filing a trademark application in the USPTO under § 44 of the Lanham Act) to obtain a U.S. trademark registration face a unique problem when attempting to enforce such registration in U.S. courts, namely the issue of use of the mark in connection with the goods and services listed in the registration.  Professor McCarthy, the foremost authority on U.S. trademark law, asks the question whether a § 44 registration can be used as a sword or as a shield.  His answer: only a shield because of the lack of use.  Professor McCarthy opines as follows:

> Legal effect of § 44 registered marks – Can a § 44 registration be used as a sword or a shield?
>
> Unlike PTO inter partes priority disputes, the situation may be quite different in right to use infringement contests in the U.S. courts. That is, of what value as an offensive weapon is a § 44 U.S. registration issued to a foreign national with no use yet in the United States?
>
> If a foreign applicant receives a registration under § 44(e) without proof of use of the mark in the United States, the problem of proving infringement must be faced. Although such a foreign registrant owns a U.S. registration, there will be no likelihood of confusion in the U.S. to trigger infringement unless and until the registrant uses the mark in the U.S. in the defendant's trade area. This is an application of the *Dawn Donut* rule, under which there will be no likelihood of confusion to enjoin until the federal registrant with priority proves a likelihood of entry into the junior user's trade area. Until that happens, no single group of customers will be faced with confusingly similar marks. Legislative history indicates an intent that the *Dawn Donut* rule be utilized in pending applications for non-used marks based upon an intent-to-use. There is no reason to apply a different rule to § 44(e) registrations of marks not used in the United States. Thus, if there is no use in the U.S., U.S. customers have no knowledge of the mark and use by another firm could not cause any likelihood of confusion. Under the *Dawn Donut* rule, there would be no domestic confusion to remedy or enjoin. …
>
> Thus, it appears that the primary benefit of a § 44 non-U.S.-used registration is defensive. The registration is in the PTO files and may deter others who search

>the files. Also, it can be used as the basis of an ex parte rejection under § 2(d) by an examiner of later applications for similar marks.

5 McCarthy on Trademarks and Unfair Competition § 29:21 (4th ed.).

Thus, a Plaintiff who has federally registered trademark issued via §66A or §44 of the Lanham Act but has not used the mark in connection with all the goods and/or services listed in the registration cannot claim ownership rights to a trademark in U.S. courts. *Union Nat'l Bank of Texas*, 909 F.2d at 842. Until the registrant begins using the mark in connection with all the listed goods and services, the registration can only be used for defensive purposes, such as to prevent future applicants in the USPTO from obtaining registrations of marks that would cause a likelihood of confusion with the registrant's mark. 5 McCarthy on Trademarks and Unfair Competition § 29:21.

Moreover, if a registration having a §§ 66A or 44 filing basis comprises an overwhelming amount of goods and/or services listed therein whereby an inference can be drawn therefrom that the registrant is attempting to adopt a mark without using the mark in commerce for all the good or service listed, then a Court has the authority to either 1) direct the USPTO to delete the unused goods and/or services from the registration or 2) direct the registrant to amend its international registration to delete therefrom all unused goods and/or services. *Sandro Andy, S.A. v. Light Inc.*, 2012 WL 6709268 *4 (S.D.N.Y. 2012).

In *Sandro Andy*, the plaintiff, a foreign company asserting its federal trademark against a domestic defendant, had obtained its registration through the Madrid Protocol. *Id.* at *1. Its registration comprised at least 250 goods and services. *Id.* After the defendant asserted a counterclaim requesting a declaration that the registrant plaintiff "lacked a bona fide intent to use the mark in connection with the goods listed in the application" and requesting an order directing the USPTO to cancel the plaintiff's registration, Plaintiff filed a motion to dismiss pursuant to

12(b)(6) of the Federal Rules of Civil Procedure. *Id*. The Court stated that "it is unclear at this stage whether there are items within [the classification] that [registrant] does not intend to market." *Id*. at * 4. Because of the laundry list of goods and service listed in the registration, the Court directed the registrant to amend its international registration to delete all unused goods and services. *Id*. After ordering the deletion of used goods and services, the Court stated "this leaves for a later motion, and after discovery, an opportunity for the parties to present the Court with evidence of [registrant]'s bona fide intent to use the mark for the remaining goods." *Id*.

In the instant case, the Plaintiff has failed to state a claim for relief for its trademark counterfeiting, infringement of registered trademark and false designation of origin claims. In its complaint, Plaintiff has alleged no use in U.S. commerce for any specific good or service except for an inference concerning a video game and a television show. However, such inference does amount to an allegation of use of such items in U.S. commerce. Yet in this lawsuit, Plaintiff asserts six (6) registered trademarks against Defendants covering a whopping twenty-one (21) classifications which include hundreds and hundreds of goods and services. Clearly, Plaintiff cannot allege – much less argue with a straight face – that it has used in U.S. commerce the goods and services listed in its trademark registrations.

Instead, it has utilized the USPTO registration system to attempt to monopolize a mark and then improperly enforce its monopoly through the U.S. court system. Through its enforcement of its trademark registrations, it is attempting to pervert U.S. trademark law by asserting registrations of marks on goods and services that it has not used in commerce – an act that the law does not condone and that Congress never intended when it penned the Lanham Act. It strains credulity to believe that Plaintiff is in fact using all the listed goods and services in U.S. commerce.

In essence, Plaintiff has attempted to adopt a mark in connection with the goods and services listed in its registration. Per the Fifth Circuit rule in *Blue Bell*, mere adoption of a mark without bona fide use, in an attempt to reserve it for the future, will not create any trademark rights. Without possessing trademark rights, Plaintiff cannot state a claim for infringement of registered trademarks, trademark counterfeiting and false designation of origin.

While Plaintiff did obtain trademark registrations, it did so through the Madrid Protocol and Paris Convention. As such, it never had to prove to the USPTO prior to the issuance of a registration that it was using the mark in U.S. commerce in connection with the applied-for goods and services – proof that all other trademark applicants must provide. Now, Plaintiff brings this lawsuit asserting six (6) trademark application covering hundreds and hundreds of items with scant to no allegations of use in its complaint. As the Fifth Circuit stated in *Union Nat'l Bank of Texas*, ownership of trademark rights is not obtained through registration but only through use. Because Plaintiff has not adequately shown that is owns a trademark through use in U.S. commerce, Plaintiff's trademark claims should be dismissed.

In the alternative, if the Court is not inclined to dismiss Plaintiff's trademark claims in its complaint, at the very least the Court should follow the lead of the *Sandro Andy* Court and require that Plaintiff amend its international registration to delete all unused goods and services before Defendants are required to answer the lawsuit. It is unfair for Defendants to have to defend against the assertion of trademark registrations in which most, if not all, of the hundreds and hundreds of goods and services listed therein are not in use by the Plaintiff in connection with the mark. How are the Defendants supposed to accurately answer the complaint?

Not only is it unfair to Defendants, it runs counter to U.S. trademark law. As discussed above, U.S. trademark rights are derived by use, not by registration. Allowing Plaintiff to assert

registrations against Defendants when it is apparent that Plaintiff has not used its mark in commerce in connection with all the goods and services listed in the registrations would allow Plaintiff to misuse the U.S. court system. Moreover, it would place an undue burden on the Defendants during litigation – a burden that U.S. trademark law never intended for Defendants to bear. Needless discovery would have to be undertaken to determine which of all of those hundreds and hundreds of goods and services is Plaintiff using in commerce, if any.

Therefore, because Plaintiff has alleged scant to no use in of the mark in connection with goods and services and because its trademark registrations were procured through the Madrid Protocol and Paris Convention whereby no evidence of use of the mark in connection with the applied-for goods and services were provided to the USPTO, Plaintiff's trademark counterfeiting, infringement of registered trademark and false designation of origin claims should be dismissed. In the alternative, Plaintiff should be required to amend its trademark registrations to delete all unused goods and services before Defendants are required to answer the lawsuit, so that Defendants can adequately and properly answer the lawsuit.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendants respectfully move this Court to dismiss Plaintiff's trademark counterfeiting, infringement of registered trademark and false designation of origin claims, or in the alternative, require that Plaintiff amend its international registration to delete all unused goods and services before Defendants are required to answer the lawsuit and for such other and further relief to which Defendants may be justly entitled.

Respectfully Submitted,

**GAGNON, PEACOCK & VEREEKE P.C.**
4245 N. Central Expressway
Suite 250, Lock Box 104
Dallas, Texas 75205
Telephone: (214) 824-1414
Facsimile: (214) 824-5490
Email: attorneys@gapslaw.com

By: /s/   Aaron P. Peacock
   Aaron P. Peacock
   State Bar No. 24060399
   J.B. Peacock, Jr.
   State Bar No. 15678500
   David M. Vereeke
   State Bar No. 20547500

ATTORNEYS FOR DEFENDANTS
AM WHOLESALE, INC., ALI RAZA
RAVJANI, AMAFHH INTERNATIONAL,
INC., AMAFHH CENTER, INC. and
MOHSIN RAZA RAVJANI

## CERTIFICATE OF SERVICE

The following document was served on Steven Abbott and Ashly Sands (and all parties receiving electronic service) per the local and federal rules of procedure via either forwarding the same as first-class mail with the United States Postal Service or by causing same to be filed in this case via electronic transmission via portable document format (.pdf) to the EM/ECF Internet web portal for this Court in this case on the 10th day of March, 2014.

/s/   Aaron P. Peacock
Of Gagnon, Peacock & Vereeke, P.C.