IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ROVIO ENTERTAINMENT, LTD. Plaintiff, | § § § | |
| v. | § § | CIVIL ACTION NO. 3:13-cv-04719-G |
| AM WHOLESALE, INC., et al. Defendant. | § § § § | |

### DECLARATION OF KATI LEVORANTA

I, KATI LEVORANTA, hereby declare as follows:

1. I am Chief Legal Officer of Rovio Entertainment Ltd. ("Rovio" or "Plaintiff"). I make and submit this declaration in connection with Plaintiff's Motion for Default Judgment.

2. I am over eighteen (18) years of age. I have never been convicted of a felony or any criminal offense involving moral turpitude, and I am fully competent to testify to the matters stated herein. I have personal knowledge of every statement made in this Declaration and such statements are true and correct.

3. Rovio is an entertainment media company established in 2003 and is the creator of the globally successful Angry Birds franchise. "Angry Birds" is a puzzle video game first released in December 2009 for Apple iOS. In the game, players use a slingshot to launch birds at pigs stationed on or within various structures, with the intent of destroying all the pigs on the playfield. As players advance through the game, new birds appear, some with special abilities that can be activated by the player. Rovio has supported Angry Birds with numerous free updates that add additional game content as well as releasing multiple new versions of the game for multiple platforms.

1

4. To date, the Angry Birds games have been downloaded over 250 billion times (250,000,000,000) across all platforms, including both regular and special editions. There are approximately 40 million (40,000,000) monthly active users across all platforms. Players log more than 1 million (1,000,000) hours of game time each day on the iOS version of the Angry Birds game and 3.33 million hours per day across all platforms.

5. During the past few years, Angry Birds has also been nominated for and won a number of significant industry awards for various versions of the Angry Birds games. In February 2010, Angry Birds was a nominee for the "Best Casual Game" award at the 6th annual International Mobile Gaming Awards in Barcelona, Spain. In June of 2010, Macworld named Angry Birds as the winner of the 2010 Macworld Award for "Best iPhone Entertainment & Lifestyle App". In July 2012, Angry Birds won "Best New Download IP" award at the Develop Awards in Brighton. In September 2010, IGN named Angry Birds as the fourth best iPhone game of all time. In April 2011, Angry Birds won both the "Best Game App" and "App of the Year" at the UK Appy Awards. At the 15th edition of the Webby Awards, Angry Birds was awarded "Best Game for Handheld Devices". In April 2012, Angry Birds again won the "Best Game App" award at the Appy Awards.

6. Rovio and its Angry Birds franchise have received widespread press and media coverage for the past four years. News stories, reports, reviews, features, press releases and blog posts have appeared in worldwide print and online publications such as: USAToday, TIME, The New York Times, The Washington Post, Forbes, The Los Angeles Times, The Chicago Tribune, The Associated Press, Reuters, and the Huffington Post, among many others.

7. The popularity of the Angry Birds games led to an expansion of Angry Birds franchise to other business areas including, but not limited to: the development and sale of merchandise featuring its characters, the launch of the ToonsTV channel, Rovio's video entertainment platform for the mobile generation airing the Angry Birds Toons television series, which surpassed more than 1,000,000,000 views in its first seven months since its release in March, 2013; and plans for a feature film which is due to be released in July of 2016.

8. Rovio has created several key strategic partnerships with over 500 licensees worldwide ("Authorized Licensees") to develop an extensive and successful global licensing program for merchandise, including more than 40,000 products featuring the ANGRY BIRDS trademark and the Angry Birds characters which include innovative product lines across multiple consumer products categories ("Authentic Products").

9. For example, since at least as early as Summer 2010, Rovio's Authorized Licensee, Commonwealth Toys has held a license in the United States to market, manufacture, distribute and sell Angry Birds plush toys, key chains, balls, PVC figures, bean bags, Christmas stockings, seasonal summer goods, banners and flags, lanyards, magnets, plush hats, snow globes, and drink ware.

10. Since around the same time, another Authorized Licensee, Fifth Sun, a distributor for a wide range of licensed clothing products, has sold clothing, namely t-shirts and sweatshirts featuring the ANGRY BIRDS trademark and Angry Birds characters.

11. In the United States, Rovio, through its website as well as through its Authorized Licensees, sells Authentic Products to such well-known retailers as Toys R Us, Kmart, Walmart, Shopko, Hallmark, Build A Bear, Pamida, Walgreens, CVS, Justice, Claires, Hot Topic,

Transworld, and Spencer Gifts, among others. Rovio and its Authorized Licensees also sell Authentic Products to over one thousand (1,000) other independent retailers in the United States.

12. While Rovio has gained significant common law trademark and other rights in its trademarks through its use, advertising and promotion, Rovio has also protected its valuable rights by filing for and obtaining federal trademark registrations.

13. Rovio is the owner of federally registered trademarks, including but not limited to: U.S. Trademark Registration Nos. 4,200,545, 4,148,716, and 3,976,576 for "ANGRY BIRDS" for a wide variety of goods in Classes 3, 9, 14, 16, 18, 20, 21, 24, 25, 27, 28, 29, 30, 32, 33, 34, 35, 36, 38, 41 and 43, U.S. Trademark Registration Nos. 4,252,003, 4,145,113 and 3,988,064 for ![bird] for a wide variety of goods in Classes 3, 9, 14, 16, 18, 20, 21, 24, 25, 27, 28, 29, 30, 32, 33, 34, 35, 36, 38, 41 and 43, U.S. Trademark No. 4,493,055 for ![pig] for a wide variety of goods in Classes 3, 5, 7, 9, 14, 15, 16, 18, 20, 21, 24, 25, 26, 27, 28, 29, 30, 32, 33, 34, 35, 36, 38, 41, 43, and 45, and U.S. Trademark No. 4,493,031 for ![bird], U.S. Trademark No. 4,489,982 for ![bird], U.S. Trademark No, 4,489,981 for ![bird], U.S. Trademark No. 4,489,980 for ![pig], U.S. Trademark No. 4,489,979 for ![bird], U.S. Trademark No. 4,486,763 for ![bird], and U.S. Trademark No. 4,486,762 for ![bird], for a wide variety of goods in Classes 3, 5, 9, 14, 15, 16, 18, 20, 21, 24, 25, 26, 27, 28, 29, 30, 32, 33, 34, 35, 36, 38, 41, and 43 (collectively, "Marks"). A true and correct copy of the registrations for the Marks are attached hereto as **Exhibit A** and incorporated herein by reference.

14. Rovio also owns both registered and unregistered copyrights in and related to the game

characters, which protect the various proprietary characters originated in the game and extended through its line of Authentic Products.

15. Rovio has protected its valuable rights by filing and obtaining United States copyright registrations in and relating to many of its characters. For example, Rovio owns the following relevant certificates of registration: VA1794919, VA1769078, VA1769080, VA1776992, VA1776995, VA1777195, VA1778702, VA1778703, and VA1778705 as well as numerous common law copyrights (hereinafter collectively referred to as the "Copyright Works"). True and correct copies of the foregoing certificates of registration are collectively attached hereto as **Exhibit B** and incorporated herein by reference.

16. As a result of Rovio's efforts, the quality of its Authentic Products, its promotions, extensive press and media coverage, and word of mouth buzz, Rovio's Marks, Copyright Works and Authentic Products have become prominently placed in the minds of the public. Members of the public have become familiar with Rovio's Marks, Copyright Works and Authentic Products, and have come to recognize the Marks, Copyright Works and Authentic Products and associate them exclusively with Rovio. Rovio has acquired a valuable reputation and goodwill among the public as a result of such association. Indeed, the Marks, Copyright Works and Authentic Products are famous in the United States, among other countries.

17. Rovio's Marks, Copyright Works and Authentic Products are vital to its business. Accordingly, Rovio suffers irreparable harm to its goodwill, as well as direct monetary loss, any time third parties sell unauthorized products bearing one or more of Rovio's Marks and/or Copyright Works, and/or products that contain labels and/or hang tags bearing Rovio's Marks and/or Copyright Works, and/or bearing marks and/or artwork

that is confusingly or substantially similar to Rovio's Marks and/or Copyright Works, and/or products that are confusingly or substantially similar to Rovio's Authentic Products (collectively hereinafter referred to as, "Infringing Products" or "Counterfeit Products").

18. Rovio actively polices and enforces its intellectual property rights, including those associated with its Marks, Copyright Works and Authentic Products. Through our enforcement and policing efforts, we have discovered a large number of Counterfeit Products being sold throughout the United States.

19. The availability of the Infringing Products is harmful to Rovio, our licensees and the public in general.

20. When an item which looks substantially or exactly like one of our Authentic Products is sold to our customers, at discount stores or flea markets in mass quantities and at lower prices and are of lower quality, it destroys the inherent value of Rovio's Marks and Copyright Works, because Rovio's designs and Authentic Products will no longer be considered unique by the public, and therefore are no longer desirable as collectible items.

21. This harm is extremely difficult to quantify and would be very difficult to correct once it occurred. Time will only increase the impact of these infringing sales. The only way to prevent further dilution of Rovio's Marks and Copyright Works and negative consumer brand perception is to stop the continued sale of Infringing Products.

22. Flooding the market with Infringing Products will not only result in lost sales, but will impair Rovio's reputation for quality products. Given the near identical nature of Defendant's Infringing Products and Rovio's Authentic Products, it is extremely likely that consumers will be confused into believing that Rovio is the source of the Infringing

Products. Because customers associate the Authentic Products with Rovio, any defects or dissatisfaction with Infringing Products will likely be attributed to Rovio.

23. Defendant is not, and never have been, an authorized retailer of Authentic Products. Neither Rovio nor any authorized agents or licensees of Rovio have consented to Defendant's use of Rovio's Marks and/or Copyright Works, nor have they consented to Defendant's use of any confusingly similar marks by Defendant. Rovio has never authorized Defendant to copy, use, manufacture, import, export, advertise, market, promote, distribute, display, offer for sale or sell any of its Copyright Works or products bearing its Marks and/or Copyright Works.

I declare under the penalty of perjury under the laws of the United States of America that to the best of my knowledge the foregoing is true and correct.

Executed on this _6_ day of June, 2014 in _ESPOO_, Finland.

By: _____

Kati Levoranta

Chief Legal Officer