# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **ROVIO ENTERTAINMENT, LTD.** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 3:13-cv-04719-G** |
| | § | |
| **AM WHOLESALE, INC., et al.** | § | |
| **Defendant.** | § | |
| | § | |

# MEMORANDUM OF LAW IN SUPPPORT OF MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT MANUEL SANDOVAL d/b/a MANNY'S PLACE

**TABLE OF CONTENTS**

I.     INTRODUCTION AND STATEMENT OF FACTS .................................................. 1

   A.   Plaintiff Rovio ....................................................................................... 1

   B.   Defendant Sandoval's Infringing Activities........................................... 5

   C.   This Action ............................................................................................ 7

II.    ARGUMENT ................................................................................................ 7

   A.   Plaintiff Has Met the Procedural Requirements For Entry Of A Default Judgment............. 8

   B.   Default Judgment Is Properly Entered Against Defendant .................................... 8

   C.   Factual Allegations in Plaintiff's Complaint are Deemed Admitted ................................... 8

   D.   Plaintiff Is Entitled To A Permanent Injunction ................................... 9

   E.   Defendant's Conduct Was Willful Entitling Plaintiff to Enhanced Statutory Damages..... 13

      1.   Defendant Wilfully Infringed At Least Two of Plaintiff's Registered Trademarks and Is Entitled To Statutory Damages of $150,000............................................................... 14

      2.   Plaintiff Is Entitled To Statutory Damages of $150,000 Based On Defendant's Willful Infringement Of Its Copyright Works........................................................................ 19

   F.   Plaintiff Is Entitled to Interest on the Judgment ................................... 21

III.   CONCLUSION............................................................................................... 21

## TABLE OF AUTHORITIES

**Cases**

*A & M Records, Inc. v. Abdallah* (C.D. Cal 1996), 948 F. Supp. at 1457 ........................................ 13

*Arthur F. Williams, Inc,. v. Helbig*, 208 F.R.D. 41 (E.D.N.Y. 2002) .............................................. 8

*Broadcast Music, Inc. v. United States Shoe Corp.*, 211 U.S.P.Q. 43 (C.D. Cal. 1980) ................. 13

*Broadway Music, Inc. v. Xanthas, Inc.*, 855 F.2d 233 (5th Cir.1988)) .......................................... 14

*Caribbean Produce Exchange v. Caribe Hydro-Trailer, Inc., 65 F.R.D. 46 (D.P.R. 1974)* ............. 9

*Carte Blanche (Singapore) Pte. v. Carte Blanche International*, 888 F.2d 260 (2d Cir. 1989) ........ 21

*Coach, Inc. v. Linda's Accesorios Y Cellulares*, No. 3:11-CV-0496, 2011 U.S. Dist. LEXIS 71351,
at *4 (N.D. Tex. June 30, 2011)................................................................................................. 9

*Commercial Law League of America, Inc. v. George, Kennedy & Sullivan, LLC*, Civil Action No.
H-07-0315, 2007 WL 2710479, at *2 (S.D. Tex. Sept. 14, 2007) ....................................... 16, 18

*Crawford v. Lee*, No. 3:10-CV-1499, 2011 U.S. Dist. LEXIS 55953 (N.D. Tex. May 24, 2011) ...... 9

*Danns & Assocs., LLC v. Galloway*, 492 F.3d 532 (4th Cir. 2007) ............................................... 10

*Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696 (9th Cir. 2008)..................................... 13

*DSC Comms. Corp. v. DGI Tech., Inc.*, 81 F.3d 597  (5th Cir. 1996)) .......................................... 9

*Enron Oil Corp. v. Diakuhara*, 10 F.3d 90 (2d Cir. 1993) .......................................................... 8

*Enron Power Marketing v. Nevada Power Co.*, 2004 U.S. Dist. LEXIS 20351, at *21 (S.D.N.Y.
2004) ...................................................................................................................................... 21

*F. W. Woolworth Co. v. Contemporary Arts, Inc.,* 344 U.S. 228 (1952)..................................... 20

*Gucci AM, Inc. v. Gold Ctr. Jewelry*, 997 F. Supp. 399 (S.D.N.Y.)............................................. 17

*Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 315 F. Supp. 2d 511 (S.D.N.Y. 2004) ..................... 15

*Harris v. Emus Records Corp*., 734 F.2d 1329 (9th Cir. 1984)................................................... 21

*Jackson v. Sturkie*, 255 F. Supp. 2d 1096 (N.D. Cal. 2003) ..................................................... 10

*Kloepping v. Fireman's Fund*, 1996 U.S. Dist. LEXIS 1786 at *3-4. (N.D. Cal 1996) .................. 8

*Lamb v. Starks*, 1997 U.S. Dist. LEXIS 11369, at *5 (N.D. Cal 1997)....................................... 21

*Lifted Research Group v. Behdad, Inc.*, 591 F. Supp. 2d 3 (D.D.C. 2008) .................................. 12

*Louis Vuitton Malletier & Oakley, Inc. v. Veit*, 211 F. Supp. 2d 567 (E.D. Pa. 2002)................... 19

*Microsoft Corp. v. McGee*,  490 F. Supp. 2d 874 (S.D. Ohio 2007) ........................................... 16

*N.A.S. Import Corp. v. Alentino, Ltd.*, 968 F.2d 250 (2d Cir. 1992)............................................ 13

*National Football League Properties, Inc. v. Wichita Falls Sportswear Inc.*, 532 F. Supp. 651 (W.D.
Wash. 1982) ............................................................................................................................. 9

*Pebble Beach Co. v. Tour18 I Ltd.*, 155 F.3d at 549-50 (5th Cir. 1998) ..................................... 9

*Peer Int'l Corp. v. Pausa Records,* Inc., 909 F.2d 1332 (9th Cir. 1990)..................................... 13

*Petmed Express, Inc. v. Medpets.com, Inc.*, 336 F. Supp. 2d 1213 (S.D. Fla. 2004) .................. 17

*Philip Morris USA Inc. v. Lee*, 547 F. Supp. 2d 685 (W.D. Tex. 2008)................................... 18, 19

*Phillip Morris U.S.A., Inc. v. Liu*, 489 F. Supp. 2d 1119 (C.D. Cal. 2007)................................... 17

*Playboy Enter., Inc. v. Universal Tel-A-Talk, Inc.*, No. Civ. A. 96-6961, 1998 WL 767440, at *8
(E.D. Pa. 1998)....................................................................................................................... 17

*Polo Fashions, Inc. v. Dick Bruhn, Inc.*, 793 F.2d 1132 (9th Cir. 1986)...................................... 11

*Quantum Fitness Corporation v. Quantum Lifestyle Centers, LLC*, 83 F. Supp. 2d 810 (S.D. Tex.
1999) ...................................................................................................................................... 11

*Taylor Corp. v. Four Seasons Greetings, LLC*, 315 F.3d 1039 (8th Cir. 2003) ............................ 11

*Taylor Made Golf Co. v. MJT Consulting Group*, 265 F. Supp. 2d 732 (N.D. Tex. 2005).............. 14

*U.S. for Use of M-CO Const. v. Shipco Gen., Inc.*, 814 F.2d at 1014 (5th Cir. 1987)...................... 8

*U.S. v. Madzima*, No. 3:08-CV-1043, 2009 U.S. Dist. LEXIS 74782, at *2 (N.D. Tex. Aug. 21,

2009) .......................................................................................................................................... 9

*University of Ga. Athletic Assoc. v. Laite*, 756 F.2d 1535 (11th Cir. 1985) ........................................ 9

*Walt Disney Co. v. Powell*, 897 F.2d 565  (D.C. Cir. 1990) ............................................................. 13

*West Pub. Co. v. Mead Data Cent., Inc.*, 799 F.2d 1219 (8th Cir. 1986) ........................................ 12

*William R. Warner & Co. v. Eli Lilly & Co.*, 265 U.S. 526 (1924) .............................................. 9, 11

## I.        INTRODUCTION AND STATEMENT OF FACTS

Defendant Manuel Sandoval d/b/a Manny's Place ("Defendant" or "Sandoval") is involved in the importation, distribution and sale of counterfeit Angry Birds products, including, but not limited to, lanyards, t-shirts, and pillows ("Infringing Products") infringing the exclusive copyright and trademark rights of Plaintiff, Rovio Entertainment, Ltd. ("Plaintiff" or "Rovio").   In flagrant disregard for the procedures of this Court, Defendant has not properly appeared in response to valid and effective service of process.   Defendant's default has deprived Plaintiff of the ability to prove a specific amount of actual damages.    Accordingly, Plaintiff relies on the statutory damages provisions contained in the Copyright Act and the Lanham Act, respectively, and specifically including the provisions for heightened measure of statutory damages for willful infringement.

Now, Plaintiff seeks judgment, including an award of statutory damages in the total amount of Three Hundred Thousand Dollars ($300,000.00) - One Hundred and Fifty Thousand Dollars ($150,000.00) pursuant to Section 504(c) of the Copyright Act and One Hundred and Fifty Thousand Dollars ($150,000.00) pursuant to Section 15 U.S.C. § 1117(c) of the Lanham Act. Plaintiff also seeks entry of a permanent injunction prohibiting Defendant from further infringement of Plaintiff's copyrights and trademarks, as well as interest on the judgment calculated pursuant to 28 U.S.C. § 1961(a).

### A.  Plaintiff Rovio

Rovio is a private limited liability company, duly organized and existing under the laws of Finland, having its principal place of business in Finland. *Complaint,* ¶ 5.[1]   As reflected in the

---

[1] As a result of Defendants' default, the allegations of the Complaint are deemed admitted. *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987) (factual allegations of the Complaint, except those relating to the amount of damages are taken as true).  See also the supporting declarations of Jason M. Drangel, Ralph Richards, Jr. and Kati Levoranta.

1

Complaint and Declaration of Plaintiff's Chief Legal Officer, Kati Levoranta ("*Levoranta Dec.*"), Rovio is an entertainment media company established in 2003 and is the creator of the globally successful Angry Birds franchise.  "Angry Birds" is a puzzle video game first released in December 2009 for Apple iOS.  In the game, players use a slingshot to launch birds at pigs stationed on or within various structures, with the intent of destroying all the pigs on the playfield.  As players advance through the game, new birds appear, some with special abilities that can be activated by the player.  Rovio has supported Angry Birds with numerous free updates that add additional game content as well as releasing multiple new versions of the game for multiple platforms. *Complaint*, ¶¶ *37-38; Levoranta Dec.*, ¶ *3.*

To date, the Angry Birds games have been downloaded over 250 billion times (250,000,000,000) across all platforms, including both regular and special editions.  There are approximately 40 million (40,000,000) monthly active users across all platforms.  Players log more than 1 million (1,000,000) hours of game time each day on the iOS version of the Angry Birds game and 3.33 million hours per day across all platforms. *Complaint, ¶¶ 39-40*; *Levoranta Dec., ¶ 4.*

During the past few years, Angry Birds has also been nominated for and won a number of significant industry awards for various versions of the Angry Birds games. *Complaint, ¶ 41*; *Levoranta Dec.*, ¶ *5.*  Rovio and its Angry Birds franchise have received widespread press and media coverage for the past four years.  News stories, reports, reviews, features, press releases and blog posts have appeared in worldwide print and online publications such as: USA Today, TIME, The New York Times, The Washington Post, Forbes, The Los Angeles Times, The Chicago Tribune, The Associated Press, Reuters, and the Huffington Post, among many others. *Complaint, ¶ 42; Levoranta Dec.*, ¶ *6.*  The popularity of the Angry Birds games led to an expansion of Angry Birds franchise to other business areas including, but not limited to: the development and sale of

2

merchandise featuring its characters, the launch of the ToonsTV channel, Rovio's video entertainment platform for the mobile generation airing the Angry Birds Toons television series, which surpassed more than one billion (1,000,000,000) views in its first seven months since its release in March, 2013; and plans for a feature film which is due to be released in July of 2016. *Complaint, ¶ 43; Levoranta Dec., ¶ 7.*

Rovio has created several key strategic partnerships with over 500 licensees worldwide ("Authorized Licensees") to develop an extensive and successful global licensing program for merchandise, including more than forty thousand (40,000) products featuring the ANGRY BIRDS trademark and the Angry Birds characters which include innovative product lines across multiple consumer products categories ("Authentic Products"). *Complaint, ¶ 44; Levoranta Dec., ¶ 8.*

For example, since at least as early as Summer 2010, Rovio's Authorized Licensee, Commonwealth Toys has held a license in the United States to market, manufacture, distribute and sell Angry Birds plush toys, key chains, balls, PVC figures, bean bags, Christmas stockings, seasonal summer goods, banners and flags, lanyards, magnets, plush hats, snow globes, and drink ware. *Levoranta Dec., ¶ 9.* Since around the same time, another Authorized Licensee, Fifth Sun, a distributor for a wide range of licensed clothing products, has sold clothing, namely t-shirts and sweatshirts featuring the ANGRY BIRDS trademark and Angry Birds characters. *Levoranta Dec., ¶ 10.*

In the United States, Rovio, through its website as well as through its Authorized Licensees, sells Authentic Products to such well-known retailers as Toys R Us, Kmart, Walmart, Shopko, Hallmark, Build A Bear, Pamida, Walgreens, CVS, Justice, Claires, Hot Topic, Transworld, and Spencer Gifts, among others. Rovio and its Authorized Licensees also sell Authentic Products to over one thousand (1,000) other independent retailers in the United States. *Levoranta Dec., ¶ 11.*

While Plaintiff has gained significant common law trademark and other rights in its trademarks through its use, advertising and promotion, Plaintiff has also protected its valuable rights by filing for and obtaining federal trademark registrations.  Plaintiff is the owner of federally registered trademarks, including but not limited to: U.S. Trademark Registration Nos. 4,200,545, 4,148,716, and 3,976,576 for "ANGRY BIRDS" for a wide variety of goods in Classes 3, 9, 14, 16, 18, 20, 21, 24, 25, 27, 28, 29, 30, 32, 33, 34, 35, 36, 38, 41 and 43, U.S. Trademark Registration Nos. 4,252,003, 4,145,113 and 3,988,064 for  for a wide variety of goods in Classes 3, 9, 14, 16, 18, 20, 21, 24, 25, 27, 28, 29, 30, 32, 33, 34, 35, 36, 38, 41 and 43, U.S. Trademark No. 4,493,055 for  for a wide variety of goods in Classes 3, 5, 7, 9, 14, 15, 16, 18, 20, 21, 24, 25, 26, 27, 28, 29, 30, 32, 33, 34, 35, 36, 38, 41, 43, and 45, and U.S. Trademark No. 4,493,031 for , U.S. Trademark No. 4,489,982 for , U.S. Trademark No, 4,489,981 for , U.S. Trademark No. 4,489,980 for , U.S. Trademark No. 4,489,979 for , U.S. Trademark No. 4,486,763 for , and U.S. Trademark No. 4,486,762 for , for a wide variety of goods in Classes 3, 5, 9, 14, 15, 16, 18, 20, 21, 24, 25, 26, 27, 28, 29, 30, 32, 33, 34, 35, 36, 38, 41, and 43 (collectively, "Marks"). *Complaint, ¶¶ 46-47, Ex. A*; *Levoranta Dec., ¶¶ 12-13, Ex. A.*

Plaintiff also owns both registered and unregistered copyrights in and related to the game characters, which protect the various proprietary characters originated in the game and extended through its line of Authentic Products.  Plaintiff has protected its valuable rights by filing and obtaining United States copyright registrations in and relating to many of its characters. For example, Plaintiff owns the following relevant certificates of registration:  VA1794919, VA1769078, VA1769080, VA1776992, VA1776995, VA1777195, VA1778702, VA1778703, and VA1778705 as well as numerous common law copyrights (hereinafter collectively referred to as the

4

"Copyright Works"). *Complaint, ¶¶ 48-49, Ex. B*; *Levoranta Dec., ¶¶ 14-15, Ex. B.*

As a result of Plaintiff's efforts, the quality of its Authentic Products, its promotions, extensive press and media coverage, and word of mouth buzz, Plaintiff's Marks, Copyright Works and Authentic Products have become prominently placed in the minds of the public. Members of the public have become familiar with Plaintiff's Marks, Copyright Works and Authentic Products, and have come to recognize the Marks, Copyright Works and Authentic Products and associate them exclusively with Plaintiff. Plaintiff has acquired a valuable reputation and goodwill among the public as a result of such association. Indeed, the Marks, Copyright Works and Authentic Products are famous in the United States, among other countries. *Complaint, ¶ 51*; *Levoranta Dec., ¶ 16.*

### B. Defendant Sandoval's Infringing Activities

Plaintiff's Copyright Marks and Copyright Works are vital to its business. *Levoranta Dec., ¶¶ 17-21, Exs. A-B.* Accordingly, Plaintiff actively polices and enforces its intellectual property rights, including those associated with its Marks, Copyright Works, and Authentic Products. *Complaint, ¶¶ 50, 53*; *Declaration of Jason M. Drangel ("Drangel Dec."), ¶ 3*; *Levoranta Dec., ¶ 18.*

Defendant was identified as a source of Infringing Products that were determined to violate a number of Plaintiff's Marks and Copyright Works. *See Complaint, ¶¶ 54-57, 61, Ex. C*; *Declaration of Ralph Richard Jr. ("Richard Jr. Dec."), ¶¶ 3-9.* Specifically, Plaintiff learned that Defendant was selling Infringing Products. *Complaint, ¶¶ 56-57, Ex. C*; *Richard Jr. Dec., ¶ 15, Ex. 1; Drangel Dec., ¶ 4.* Plaintiff retained a licensed investigator to work with the Amarillo Police Department to seize the Infringing Products. *Drangel Dec., ¶ 6.* The criminal action against Defendant was conducted by and on behalf of a number of different brand owners. *Richard Jr. Dec., ¶ 9.* The Infringing Products seized by the investigator and Amarillo police were examined by counsel for

Plaintiff and confirmed to violate both Plaintiff's Marks and Copyright Works. *Complaint, ¶ 57*; *Drangel Dec., ¶¶ 13, 16, Ex. 1.*

Plaintiff has identified at least six (6) different Copyright Works: Red Bird, Green Bird, Black Bird, White Bird, Yellow Bird, and Blue Bird appearing on the Infringing Products. *Drangel Dec ¶ 15.* Plaintiff has also identified the ANGRY BIRDS and the  Marks appearing on all Infringing Products. *Drangel Dec ¶ 14.* Defendant's Infringing Products are nearly identical to Plaintiff's Authentic Products, with only minor variations that no ordinary consumer could recognize. *Drangel Dec ¶ 17; Levoranta Dec., ¶ 22.* Plaintiff has never consented to the Defendant's use of any of its Marks or Copyright Works, nor has Plaintiff ever authorized the Defendant to use any of its Marks and Copyright Works. *Complaint, ¶ 60; Levoranta Dec., ¶ 23.*

Defendant admitted selling counterfeit goods to Plaintiff's investigator. *Richard Jr. Dec., ¶ 5.* Defendant indicated to the investigator that he purchased the Infringing Products on the Internet or at a Las Vegas trade show on the date of the seizure (*Richard Jr. Dec., ¶ 13*), and then later indicated that he purchased the Infringing Products from two (2) other wholesale sources to counsel for Plaintiff. *Drangel Dec., ¶ 18, Ex. 1.*

Defendant was convicted of trademark counterfeiting from an unrelated criminal offense committed on May 21, 2011 and sentenced on February 25, 2014. *Drangel Dec., ¶ 19, Ex. 2.*

It is not clear how many units of Infringing Products the Defendant purchased and sold. Defendant's default has deprived Plaintiff of the ability to prove a specific amount of actual damages.[2]

---

[2] Plaintiff made a motion to extend the time to file this motion for default judgment in order to have time to gather information from third parties and third party defendants to determine the scope of the infringement by Defendant, but this motion was denied. (*Dkt. 103*).

Defendant's intentional and deceitful misconduct not only results in lost profits to Plaintiff, but it destroys the inherent value of Plaintiff s Marks and Copyright Works, it harms Plaintiff's reputation for providing quality products, it dilutes the Plaintiff's brand and goodwill, and it negatively affects Plaintiff's relationships with current customers (both retail sellers and ultimate consumers), as well as Plaintiff's ability to attract new customers. *Levoranta Dec., ¶¶ 17-22.*

### C.  This Action

On November 27, 2013, Plaintiff filed this action for copyright infringement arising under the Copyright Laws of the United States, 17 U.S.C. § 101 et seq.; for counterfeiting in violation of 15 U.S.C. §§ 1114, 1116(d), and 1117(b)-(c); for trademark infringement in violation of § 32 of the Lanham Act, 15 U.S.C. § 1114; and for false designation of origin and unfair competition in violation of Section 43(a) of the Trademark Act of 1946, as amended (15 U.S.C. § 1125(a)).  On April 14, 2014, Plaintiff filed a request for entry of default against Defendant *(Dkt. 93)* in accordance with Fed. R. Civ. P. 55(a).  The Clerk of this Court entered default on the same date *(Dkt. 94).*

Plaintiff notified counsel for Defendant by telephone and e-mail during the week of June 2, 2014 of its intention to file this motion for default judgment on June 6, 2104 as ordered by the Court.  Plaintiff indicated that if counsel for Defendant made an appearance on Defendant's behalf before June 6, 2014, Plaintiff would consent to Defendant's motion to vacate the default and would refrain from filing this motion for default judgment.  Counsel for Defendant indicated that he would contact Defendant to confirm whether Defendant wished to retain him for the instant case.  As of the time of filing this Motion, Counsel for Defendant has not confirmed representation of Defendant. *Drangel  Dec., ¶ 21.*

## II.      ARGUMENT

### A.    Plaintiff Has Met the Procedural Requirements For Entry Of A Default Judgment

Federal Rule of Civil Procedure 55(b) provides for a court-ordered default judgment following entry of default by the court clerk under Rule 55(a). *Kloepping v. Fireman's Fund*, 1996 U.S. Dist. LEXIS 1786 at *3-4. (N.D. Cal 1996).  Plaintiff has complied with Fed. R. Civ. P. 54(c) and 55(a).  On November 27, 2013, Plaintiff filed the instant action.  Defendant failed to answer or otherwise respond to the Complaint.  Accordingly, on April 14, 2014, Plaintiff filed a request for entry of default against Defendant *(Dkt. 93)* in accordance with Fed. R. Civ. P. 55(a).  The Clerk of this Court entered a default against Defendant on the same date *(Dkt. 94).*  Further, Defendant is not an infant, incompetent person, in the military, or otherwise exempt under the Service Members Civil Relief Act. *Drangel Dec.*, ¶ *10.*  Plaintiff does not request relief that differs from or exceeds that prayed for in the Complaint.

### B.    Default Judgment Is Properly Entered Against Defendant

The entry of a default judgment is entrusted to the sound discretion of the district court. *See, e.g., Arthur F. Williams, Inc,. v. Helbig*, 208 F.R.D. 41, 44 (E.D.N.Y. 2002); *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993) ("The dispositions of motions for entries of default and default judgments and relief from the same under Rule 55(c) are left to the sound discretion of a district court because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties.").  As discussed below, a default judgment is warranted in this case.

### C.    Factual Allegations in Plaintiff's Complaint are Deemed Admitted

Upon the entry of default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true. *See, U.S. for Use of M-CO Const. v. Shipco Gen., Inc., 814* F.2d at 1014 (5th Cir. 1987); *U.S. v. Madzima*, No. 3:08-CV-1043, 2009 U.S. Dist. LEXIS

74782, at *2 (N.D. Tex. Aug. 21, 2009); 10 *Moore's Federal Practice* §55.12[1] (3d Ed. 2002). Further, a party's default is deemed to constitute a concession of all well-pleaded allegations of liability. *See id.; see also Crawford v. Lee*, No. 3:10-CV-1499, 2011 U.S. Dist. LEXIS 55953 (N.D. Tex. May 24, 2011).

### D. Plaintiff Is Entitled To A Permanent Injunction

Pursuant to the Lanham Act, 15 U.S.C. § 1116, a plaintiff is entitled to a permanent injunction to prevent any future trademark infringement by a defendant. *Pebble Beach Co. v. Tour18 I Ltd.*, 155 F.3d at 549-50 (5th Cir. 1998). Injunctive relief is one of the standard remedies in a trademark infringement case. *See, e.g., William R. Warner & Co. v. Eli Lilly & Co.*, 265 U.S. 526, 532-33 (1924); *University of Ga. Athletic Assoc. v. Laite*, 756 F.2d 1535 (11th Cir. 1985) (affirming entry of permanent injunction); *National Football League Properties, Inc. v. Wichita Falls Sportswear Inc.*, 532 F. Supp. 651, 664 (W.D. Wash. 1982).

In this Circuit, permanent injunctive relief is appropriate, even in the default context, if the plaintiff demonstrates: "(1) actual success on the merits; (2) no adequate remedy at law; (3) that the threatened injury outweighs any damage to the defendant; and (4) that the injunction will not disserve the public interest." *Coach, Inc. v. Linda's Accesorios Y Cellulares*, No. 3:11-CV-0496, 2011 U.S. Dist. LEXIS 71351, at *4 (N.D. Tex. June 30, 2011) (citing *DSC Comms. Corp. v. DGI Tech., Inc.*, 81 F.3d 597, 600 (5th Cir. 1996)).

By virtue of the Defendant's default, Plaintiff has succeeded on the merits of this action, and has further established, among other things, that it has no remedy at law and will continue to suffer irreparable harm if the Defendant is not permanently enjoined from infringing Plaintiff's Marks and Copyright Works. *See, e.g., Caribbean Produce Exchange v. Caribe Hydro-Trailer, Inc., 65 F.R.D. 46, 48 (D.P.R. 1974)* (by its default, a defendant's liability to plaintiff is deemed established);

*Complaint,* ¶ *65* (without a permanent injunction, Plaintiff will continue to suffer irreparable injury); *see also Levoranta Dec.,* ¶ *17*  ("[ ] Rovio suffers irreparable harm to its goodwill, as well as direct monetary loss, any time third parties sell unauthorized products bearing one or more of Rovio's Marks and/or Copyright Works…").

Defendant's failure to respond or otherwise appear in this action also does not provide Plaintiff any assurance, or even suggest that Defendant has stopped infringing Plaintiff's Marks and Copyright Works.  An injunction is necessary to fully compensate Plaintiff for the irreparable injury committed by Defendant. *Jackson v. Sturkie*, 255 F. Supp. 2d 1096, 1103 (N.D. Cal. 2003) (granting permanent injunction as part of default judgment in copyright infringement action in part because "defendant's lack of participation in this litigation has given the court no assurance that defendant's infringing activity will cease.")

Moreover, the irreparable harm to Plaintiff unquestionably outweighs any damage that could possibly result to the Defendant from the issuance of a permanent injunction enjoining it from infringing Plaintiff's Marks and Copyright Works in which the Defendant has absolutely no lawful interest.  "Irreparable injury often derives from the nature of copyright violations, which deprive the copyright holder of intangible exclusive rights."  *Danns & Assocs., LLC v. Galloway*, 492 F.3d 532, 544 (4th Cir. 2007).  Plaintiff has alleged in its Complaint, and has presented specific evidence that Defendants have infringed its Marks and Copyright Works by, *inter alia*, willfully and knowingly copying, manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, and/or selling Infringing Products, causing irreparable injury to Plaintiff. *Complaint,* ¶¶ *52-65* ("Plaintiff has no adequate remedy at law.")

Moreover, the balance of hardships clearly weighs in favor of entry of a permanent injunction.  Defendant has willfully and knowingly sold substandard imitations of Plaintiff's

Authentic Products, reaping the benefits of Plaintiff's Marks and Copyright Works with little to no cost to Defendant.  Plaintiff, on the other hand, has been irreparably harmed, and will continue to be irreparably harmed, by the insertion of the substandard Infringing Products into the stream of commerce, losing both profits and goodwill. *Id.*  Unless a defendant can irrefutably demonstrate that it has ceased or will immediately cease its infringing actions, a permanent injunction should be granted by the Court. *Polo Fashions, Inc. v. Dick Bruhn, Inc.*, 793 F.2d 1132, 1135 (9th Cir. 1986); *see also William R. Warner & Co. v. Eli Lilly & Co.*, 265 U.S. 526, 532 (1924) (a plaintiff is "entitled to effective relief; and any doubt in respect of the extent thereof must be resolved in its favor as the innocent producer and against the [defendant], which has shown by its conduct that it is not to be trusted").  If a defendant does not intend to infringe in the future, a permanent injunction would not harm them; if they do infringe, the injunction provides substantial protection to the plaintiff. *See Polo Fashions, Inc.*, 793 F.2d at 1135-36.  In light of Defendant's conduct thus far in violating the rights of multiple brand owners (*Richard Jr., Dec. ¶ 9*), and his failure to participate in this action and produce any evidence to the Court that he intends to cease his infringing activities, the balance of hardships clearly favors the entry of a permanent injunction against Defendant. Defendant was convicted of trademark counterfeiting from an unrelated criminal offense committed on May 21, 2011 for which he was sentenced earlier this year.  *Drangel Dec., ¶ 19, Ex. 2*.  Further, Defendant also defaulted in the action brought against him by Coach, Inc. *Drangel Dec., ¶ 20*. Despite this, Defendant has continued to engage in illegal infringing and counterfeiting conduct.

Indeed, "the public interest is always served by requiring compliance with Congressional statutes such as the Lanham Act and by enjoining the use of infringing marks." *Quantum Fitness Corporation v. Quantum Lifestyle Centers, LLC*, 83 F. Supp. 2d 810, 832 (S.D. Tex. 1999); *see also Taylor Corp. v. Four Seasons Greetings, LLC*, 315 F.3d 1039, 1042 (8th Cir. 2003); *West Pub. Co.*

*v. Mead Data Cent., Inc.*, 799 F.2d 1219, 1229 (8th Cir. 1986).  Again, Defendant has willfully and knowingly inserted substandard Infringing Products which infringe Plaintiff's Marks and Copyright works.

For these reasons, Plaintiff respectfully submits that the Defendant should be permanently enjoined from infringing upon or diluting any of Plaintiff's Marks or otherwise impairing Plaintiff's reputation and the goodwill associated therewith and from infringing upon Plaintiff's Copyright Works. *See, e.g., Lifted Research Group v. Behdad, Inc.*, 591 F. Supp. 2d 3, 8 (D.D.C. 2008) (permanent injunction warranted where, by default, plaintiff succeeded on the merits of federal trademark counterfeiting case).

Plaintiff further submits that the entry of a broad permanent injunction is warranted in this case given that the risk of continuing infringement is likely due to the strong demand for Plaintiff's products, and because Defendant has knowingly, intentionally, and willfully infringed Plaintiff's famous Marks for the purpose of trading on Plaintiff's reputation and goodwill and knowingly, intentionally, and willfully infringed Copyright Works, as established by the Defendant's default[3], and further demonstrated by (1) the Defendant's use of marks, images and designs that are confusingly and/or substantially similar to, virtually identical to, and/or constitute counterfeiting and/or infringement of Plaintiff's Marks and/or Copyright Works [4]; and (2) Defendant's representation that he sold counterfeit product [5]; and (3) a history of criminal trademark

---

[3]  *See Complaint ¶¶ 65, 70, 72, 78, 88* (Defendants are engaging in their illegal counterfeiting and infringing activities knowingly and intentionally or with reckless disregard or willful blindness to Plaintiff).

[4]  *See, e.g., Bd. of Supers. for La. State Univ. Agric. and Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 482 (5th Cir. 2008) (*quoting Univ. of Kan. v. Sinks*, 565 F. Supp. 2d 1216, 1244-45, 1247-48 (D. Kan. 2008) ("[t]he high degree of similarity weighs strongly in favor of a finding of intent; the use of almost identical marks supports a conclusion that defendants intended to derive a benefit from KU's reputation, rather than rely upon their own")).

[5]  *See Richard Jr. Dec., ¶ 5.*

counterfeiting. *Drangel Dec., ¶ 19, Ex. 2. See also, e.g., Walt Disney Co. v. Powell*, 897 F.2d 565, 567-68 (D.C. Cir. 1990) (where liability is determined adversely to the infringer and a significant threat of future infringement remains, it is appropriate to permanently enjoin the future infringement of all works owned by the plaintiff, including those not involved in the immediate suit); *Broadcast Music, Inc. v. United States Shoe Corp.*, 211 U.S.P.Q. 43, 45 (C.D. Cal. 1980), *aff'd*, 678 F.2d 816 (9th Cir. 1982) (granting an injunction enjoining the infringement of not only the seven songs at issue in this case, but extending the prohibition to the infringement of any song in BMI's repertoire).

### E.    Defendant's Conduct Was Willful Entitling Plaintiff to Enhanced Statutory Damages

Defendant has elected not to defend this case nor dispute any of Plaintiff's allegations in the Complaint. *Drangel Dec., ¶ 11.*   Thus, in light of Defendant's default, the willfulness of Defendant's conduct, as pled in the Complaint, is admitted.  *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008) (allegation of willfulness deemed admitted on default).

Defendant's willfulness is not only established by his default.  Although the Copyright Act is silent as to the definition of willful infringement, "a defendant acts willfully if he or she knew, had reason to know, or recklessly disregarded the fact that his or her conduct constituted copyright infringement." *A & M Records, Inc. v. Abdallah* (C.D. Cal 1996), 948 F. Supp. at 1457; *citing Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1335-36 (9th Cir. 1990).  Such knowledge may be actual or constructive and may be inferred from defendant's conduct rather than proven directly. *N.A.S. Import Corp. v. Alentino, Ltd.*, 968 F.2d 250, 252 (2d Cir. 1992).

Here, Defendant used marks, designs and/or characters that are confusingly and/or substantially similar to, virtually identical to, and/or constitute counterfeiting and/or infringement of Plaintiff's Marks and Copyright Works.  Defendant offered for sale and sold Infringing Products

bearing marks, designs and/or characters that are confusingly and/or substantially similar to, if not virtually identical to, at least six (6) copyrighted characters contained in Plaintiff's Copyright Works on three (3) different types of Infringing Products. *Complaint, ¶¶ 48-49, Ex. B; Levoranta Dec. ¶ 15, Ex. B; Drangel  Dec., ¶¶ 15-17; Richard Jr. Dec., ¶ 15, Ex. 1.*   The evidence also indicates that the three (3) different types of Infringing Products sold by Defendant bore at least two (2) infringing and counterfeit Marks (ANGRY BIRDS and 🐦). *Complaint, ¶¶ 46-47, Ex. A; Levoranta Dec. ¶ 13, Ex. A*; *Drangel  Dec., ¶¶ 14, 16-17; Richard Jr. Dec., ¶ 15, Ex. 1.*

Defendant's willfulness is also established by his acknowledgement that he was selling counterfeit products.  Defendant admitted Infringing Products to Plaintiff's investigator. *Richard Jr. Dec., ¶ 5.*  "A defendant acts willfully 'if he knows his actions constitute an infringement.'" *Taylor Made Golf Co. v. MJT Consulting Group*, 265 F. Supp. 2d 732, 748 (N.D. Tex. 2005) (*quoting Broad. Music, Inc. v. Xanthas, Inc.*, 855 F.2d 233, 236 (5th Cir.1988)).  Further, Defendant has engaged in illegal infringing and counterfeiting activities in the past.  Defendant was convicted of trademark counterfeiting from an unrelated criminal offense committed on May 21, 2011, and was sentenced earlier this year.  *Drangel Dec., ¶ 19, Ex. 2.*  Despite this, Defendant has not been deterred from continuing to engage in such activities.  Finally, Defendant has been dishonest about the source(s) of the Infringing Products.  Defendant indicated to Plaintiff's investigator that he purchased the Infringing Products on the Internet or at a Las Vegas trade show (*Richards Dec., ¶ 13*) on May 21, 2013, and then later indicated he purchased the Infringing Products from two (2) other wholesale sources to counsel for Plaintiff. *Drangel Dec., ¶ 18, Ex.1.*

## 1. Defendant Wilfully Infringed At Least Two of Plaintiff's Registered Trademarks and Is Entitled To Statutory Damages of $150,000

Plaintiff's ownership of exclusive rights in its Marks cannot be disputed.  *Complaint, ¶¶ 37-*

*47, Ex. A.*   Regardless, as a result of Defendant's default, Plaintiff's ownership of these Marks is uncontested.   The Marks at issue are specifically are the ANGRY BIRDS and  Marks. Defendant knowingly and intentionally sold Infringing Products bearing marks, designs and/or characters that are confusingly and/or substantially similar to, if not virtually identical to Plaintiff's Marks.   The evidence demonstrates that Defendant infringed Plaintiff's Marks by its unauthorized sale of Infringing Products bearing marks, images and designs that are confusingly and/or substantially similar to, virtually identical to, and/or constitute counterfeiting and/or infringement of Plaintiff's Marks.   *Complaint, ¶ 54-59, Ex. C; Drangel Dec., ¶¶ 14, 16-17; Richard Jr. Dec., ¶ 15, Ex. 1.*   Thus, Plaintiff is entitled to an award based upon the infringement and counterfeiting of two (2) Marks.

Plaintiffs in federal trademark counterfeiting cases such as this may elect an award of statutory damages pursuant to 15 U.S.C. § 1117(c).   *See* 15 U.S.C. § 1117(c).   Section 1117(c)(1) provides for an award of not less than $1,000.00 nor more than $200,000.00 per counterfeit mark per type of goods sold, offered for sale, or distributed, as the court considers just. *Id.*   However, if the defendant's counterfeiting actions are found to be willful, the court may impose damages of up to $2,000,000.00 per counterfeit mark per type of good infringed. *See* 15 U.S.C. § 1117(c)(2).

Congress enacted the statutory damages remedy in trademark counterfeiting cases because evidence of a defendant's profits in such cases is almost impossible to ascertain. *See e.g., Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 315 F. Supp 2d 511, 520 (S.D.N.Y. 2004) (quoting S. Rep. 104-177, at 10 (1995) ("Congress added the statutory damages provision of the Lanham Act in 1995 because 'counterfeiters' records are frequently nonexistent, inadequate, or deceptively kept... making proving actual damages in these cases extremely difficult if not impossible."); *Commercial Law League of America, Inc. v. George, Kennedy & Sullivan, LLC*, Civil Action No. H-07-0315,

15

2007 WL 2710479, at *2 (S.D. Tex. Sept. 14, 2007) (*quoting* S. Rep. 104-177, at 10 (1995))

("Enabling trademark owners to elect statutory damages is both necessary and appropriate in light

of the deception routinely practiced by counterfeiters.").

Statutory damages are unquestionably warranted in the case where the Defendant, by virtue

of his default, has deprived Plaintiff of the ability to obtain information regarding the Defendant's

sales, profits, and costs. *See Microsoft Corp. v. McGee*, 490 F. Supp. 2d 874, 888 (S.D. Ohio 2007)

("Statutory damages are appropriate in default judgment cases because the information needed to

prove actual damages is within the infringer's control and is not disclosed."). In the instant case, the

amount of Defendant's sales is unknown because the Defendant has defaulted and thus, has

provided no evidence of purchases or sales during discovery. Any information that was provided to

Plaintiff's investigator and counsel for Plaintiff, prior to the filing of the Complaint was suspect, at

best. First, Defendant indicated that he purchased the Infringing Products on the Internet or at a Las

Vegas convention (*Richard Jr. Dec., ¶ 13*). Later, he indicated that the Infringing Products were

purchased from two (2) wholesalers. *Drangel Dec., ¶ 18, Ex. 1.* Further, Defendant was also found

to be selling a variety of other counterfeit goods for many of the most well-known brands. *Richard*

*Jr. Dec., ¶ 9.* Finally, even after having been previously charged with and convicted of trademark

counterfeiting, and sued civilly by another brand for selling counterfeit and infringing products,

Defendant has not been deterred from continuing to engage in illegal infringing and counterfeiting

activities. *Drangel Dec., ¶¶ 19-20, Ex. 2.* Accordingly, Plaintiff elects to recover statutory damages

for its claim of federal trademark counterfeiting.

District courts have broad discretion in setting the amount of statutory damages awarded

under the Lanham Act. *Dial One of the Mid-South, Inc.*, 269 F.3d at 527 (stating that the district

court's discretion is only limited by equitable principles and the restriction that the award must be

compensatory and not punitive.)[6]  In this regard, statutory damages under § 1117(c) are intended not just for compensation for losses, but also to punish and deter wrongful conduct. *See Petmed Express, Inc. v. Medpets.com, Inc.*, 336 F. Supp. 2d 1213, 1222 (S.D. Fla. 2004). Perhaps the best dissertation regarding an award of statutory damages pursuant to § 1117(c) can be found in *Sara Lee Corp.* 36 F. Supp. 2d 161 at 166.  The *Sara Lee* Court stated as follows:

> While § 1117(c) looks to compensatory consideration (*e.g.*, actual losses and trademark value), it also looks to punitive considerations (*e.g.*, deterrence to other infringers and readdress of wrongful defense conduct) ... Thus, damages inquiries under § 1117(c) and those under §§ 1117(a), (b) look to similar considerations but differ in that under § 1117(c), "there is no necessary mathematical relationship between the size of such an award and the extent or profitability of the Defendant's wrongful activity because § 1117(c) omits the strict limits on compensatory and punitive relief of §§ 1117(a),(b)." *Gucci AM, Inc. v. Gold Ctr. Jewelry*, 997 F. Supp. 399, 404 (S.D.N.Y.); *modified on other grounds,* 997 F. Supp. 409 (S.D.N.Y.), *rev'd on other grounds,* 158 F.3d 631 (2d Cir.1998).

As such, courts have held that an award of statutory damages is an appropriate remedy even for infringements where no actual damages or profits were proved. *See Playboy Enter., Inc. v. Universal Tel-A-Talk, Inc.*, No. Civ. A. 96-6961, 1998 WL 767440, at *8 (E.D. Pa. 1998) (awarding statutory damages where plaintiff failed to prove actual damages or profits); *see also Phillip Morris U.S.A., Inc. v. Liu*, 489 F. Supp. 2d 1119, 1123-24 (C.D. Cal. 2007) (after noting that it is permissible to award the maximum statutory damages against an infringer even if the plaintiff only suffered nominal damages, the Court awarded plaintiff $1,000,000 per mark infringed "based on the need (1) to deter Defendant, and other counterfeiters, from violating Plaintiff's valid trademarks, (2) to compensate Plaintiff for the damage caused by Defendant's actions, and (3) to punish Defendant

---

[6]   As discussed below, the restriction against *punitive* awards applies solely to awards of defendants' profits and damages sustained by plaintiffs pursuant to 15 U.S.C. § 1117(a).  It does not apply to awards under 15 U.S.C. § 1117(b) or (c).  *See also Sara Lee Corp. v. Bags of NY, Inc.*, 36 F. Supp. 2d 161, 165 (S.D.N.Y. 1999) ("Unlike 1117(a), which merely *permits* trebling of damages in the court's discretion, § 1117(b) *requires* trebling of damages upon a finding of willfulness, absent extenuating circumstances. Also unlike § 1117(a) is what the Second Circuit has termed "the punitive nature of the treble damages provision" under § 1117(b), which trebles damages not to compensate as under § 1117(a), but "to deter potential counterfeiters") (*quoting Louis Vuitton S.A.. v. Spencer Handbags Corp.,* 765 F.2d 966, 970 (2d Cir.1985)).

for his willful violation of Plaintiff's trademarks.").

Given Defendant's willful conduct, the applicable range of statutory damages in this case is One Thousand Dollars ($1,000.00) to Two Million Dollars ($2,000,000.00) per counterfeit Mark, offered for sale, or distributed. *See* 15 U.S.C. § 1117(c)(1)-(2).  Indeed, the Lanham Act does not provide courts with guidance as to how to select an amount of damages within the statutory range. *See Commercial Law League of America, Inc. v. George, Kennedy & Sullivan LLC*, 2007 WL 2710479, at *2 (S.D. Tex 2007) (consequently, courts often look to analogous statutory provisions in the Copyright Act, where factors such as the willfulness of the defendant's conduct, the deterrent effect of an award on both the defendant and on others, the value of the copyright, whether the defendant has cooperated in providing necessary records to assess the value of the infringing material, and the losses sustained by the plaintiff are considered); *Philip Morris USA Inc. v. Lee*, 547 F. Supp. 2d 685, 695 (W.D. Tex. 2008) ("In cases involving counterfeit goods, courts have considered the size of a defendant's counterfeiting operations, and have been inclined to award the statutory maximum where a "large commercial quantity" is involved).

If this Court were to award Plaintiff only minimal damages, then Defendant in this action, as well as future defendants, would not be discouraged from illegally obtaining and selling counterfeit products bearing unauthorized copies of Plaintiff's Marks, and would be encouraged to ignore any legal actions taken by Plaintiff against them.  Given that Defendant has already been convicted of criminal trademark counterfeiting, the granting of the requested statutory damage award at this time will act to deter Defendant (and others) from violating Plaintiff's Marks and otherwise violating Plaintiff's intellectual property rights with relative impunity.

Plaintiff respectfully submits that a statutory damage award of One Hundred and Fifty Thousand Dollars ($150,000.00) is both reasonable and appropriate based on the Defendant's

willful counterfeiting of at least two (2) Marks on at least three (3) Infringing Products - Twenty-Five ($25,000.00)) per trademark (two (2)) and per type of merchandise (three (3)), (i.e., six (6) total) to achieve the statutory goals of compensation, punishment, and deterrence. *See Philip Morris USA Inc. v. Lee*, 547 F. Supp. 2d at 695-96 ("the Lanham Act's statutory damages provision was designed to ensure adequate compensation and deter the use of counterfeit marks"); *Louis Vuitton Malletier & Oakley, Inc. v. Veit,* 211 F. Supp. 2d 567, 583 (E.D. Pa. 2002) (citing S.Rep. No. 117, 104th Cong.1995) ("The purpose of § 1117 of the [Lanham] Act is to take the incentive out of counterfeiting and strengthen the civil remedies against counterfeiters.").[7]

## 2. Plaintiff Is Entitled To Statutory Damages of $150,000 Based On Defendant's Willful Infringement Of Its Copyright Works

Section 504(c) of the Copyright Act allows a plaintiff to elect either statutory damages or actual damages for copyright infringement. 17 U.S.C. § 504(c)(l). Plaintiff's ownership of exclusive rights in the Copyright Works cannot be disputed. *Complaint, ¶¶ 48-49, Ex. B.* Regardless, as a result of Defendant's default, Plaintiff's ownership of these copyrights is uncontested. The Copyright Works at issue are specifically the: Red Bird, Green Bird, Black Bird, White Bird, Yellow Bird, and Blue Bird. Defendant intentionally and willfully sold Infringing Products bearing one or more of Plaintiff's Copyright Works or bearing designs or characters that are substantially similar or virtually identical to Plaintiff's Copyright Works. *Complaint, ¶¶ 38, 54-59, Ex. C;*

---

[7] Plaintiff would note that many courts have awarded statutory damages in amounts that are similar to or greater than the amount requested in this case. See, e.g., *Farouk Systems, Inc. v. Parmar*, Civil Action No. H-07-3384, 2008 WL 3852350, at ** 1, 5 (S.D. Tex. 2008) (awarding $250,000.00 for willful infringement of two trademarks); *Philip Morris USA Inc. v. Lee*, 547 F. Supp. 2d at 697 (awarding $1,000,000.00 for co-defendant's willful infringement of two trademarks); *Perry Ellis Int'l, Inc. v. URI Corp.*, No. 06-22020-CIV, 2007 WL 3047143, at *10 (S.D. Fla. 2007) (awarding $1,000,000.00 for one counterfeit mark); *Microsoft Corp. v. Software Wholesale Club, Inc.*, 129 F. Supp. 2d 995, 1012 (S.D. Tex. 2000) (awarding $440,000.00, which consisted of $50,000.00 for each of seven (7) trademark infringements, and $15,000.00 for each of six (6) copyright infringements); *Philip Morris U.S.A., Inc. v. Banh*, No. CV 03-4043 GAF (PJWx), 2005 WL 5758392, at *7 (C.D. Cal. 2005) (awarding $4,000,000 for the willful misuse of four (4) trademarks); *Philip Morris U.S.A., Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 501-02 (C.D. Cal. 2003) (awarding $2,000,000 for the willful counterfeiting of two (2) trademarks for one (1) type of product –cigarettes).

*Drangel Dec., ¶¶ 15-17.*  The evidence demonstrates that Defendant infringed the Copyright Works by its unauthorized sale of Infringing Products bearing Plaintiff's Copyright Works or bearing designs or characters that are substantially similar or virtually identical to Plaintiff's Copyright Works.  Thus, Plaintiff is entitled to an award based upon the six (6) Copyright Works infringed. Plaintiff seeks Twenty Five Thousand Dollars ($25,000.00) per Copyright Work for which it has evidence of infringement, specifically, the following six (6) Copyright Works: Red Bird, Green Bird, Black Bird, White Bird, Yellow Bird, and Blue Bird (*Drangel Dec., ¶¶ 15-17; Richard Jr. Dec., ¶ 15, Ex. 1*), for a total of One Hundred and Fifty Hundred Thousand Dollars ($150,000.00). This award is well within the statutory limits set in the Copyright Act, as well as within the limits applicable to acts of innocent infringement.  Even for "uninjurious and unprofitable invasions of copyright," an award of $25,000 per copyright infringed is appropriate to "vindicate the statutory policy" of protecting Plaintiff's investment in its copyrighted works and serving as a deterrent to future acts of infringement. *F. W. Woolworth Co. v. Contemporary Arts, Inc.,* 344 U.S. 228, 233 (1952).  Accordingly, this amount can be properly awarded given (i) Defendant's willful conduct (discussed above); and (ii) Defendant's willful disregard for the process of this Court (also discussed above).

Section 504(c) provides, in pertinent part:

"(1)     Except as provided by clause (2) of this subsection, the copyright owner may elect ...to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect  to any one work, ...in a sum of not less than  $750 or more than $30,000 as the court considers just. . .

(2)     In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000."

17 U.S.C. § 504(c)(l)-(2).

20

The Court has "wide discretion in setting the amount of statutory damages, 'constrained only by the specified maxima and minima'" of the Copyright Act. *Lamb v. Starks*, 1997 U.S. Dist. LEXIS 11369, at *5 (N.D. Cal 1997) *quoting Harris v. Emus Records Corp.*, 734 F.2d 1329, 1335 (9th Cir. 1984).

Defendant offered for sale and sold at least three (3) Infringing Products bearing substantially similar, if not virtually identical, reproductions of Plaintiff s Copyright Works. *Drangel Dec., ¶¶ 15-17.* Defendant was also found to be selling a variety of counterfeit goods for many of the most well-known brands and was convicted of counterfeiting in the past. *Richard Jr., Dec., ¶ 9; Drangel Dec., ¶¶ 19, Ex. 2.* However, since Defendant has defaulted, and therefore has not provided evidence of purchases or sales, the amount of Defendant's sales is unknown.

Defendant chose to permit the entry of his default. Because Defendant's default has deprived Plaintiff of the ability to prove a specific amount of actual damages, Plaintiff has been left with no choice but to seek an award of statutory damages. Based upon Defendant's willful conduct, Plaintiff is entitled to an award of statutory damages in the reasonable amount sought of One Hundred and Fifty Thousand Dollars ($150,000.00) against Defendant for infringement of its Copyright Works by Defendant.

### F.     Plaintiff Is Entitled to Interest on the Judgment

Plaintiff is entitled to post-judgment interest. "Interest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). Post-judgment interest shall be calculated pursuant to the statutory rate. *Id.; Enron Power Marketing v. Nevada Power Co.*, 2004 U.S. Dist. LEXIS 20351, at *21 (S.D.N.Y. 2004) *citing Carte Blanche (Singapore) Pte. v. Carte Blanche International*, 888 F.2d 260, 269 (2d Cir. 1989).

### III.     CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that it be awarded permanent injunctive relief enjoining Defendant from further violation of its rights.   In addition, Plaintiff requests judgment in its favor in the amount of One Hundred and Fifty Thousand Dollars ($150,000.00) in Copyright Act statutory damages and One Hundred and Fifty Thousand Dollars ($150,000.00) in Lanham Act statutory damages, and post judgment interest.

Dated:  June 6, 2014

Respectfully submitted,

BY: s/ *Jason M. Drangel*
**EPSTEIN DRANGEL LLP**
Jason M. Drangel
Ashly E. Sands
60 East 42nd Street, Suite 2410
New York, NY 10165
Telephone: (212) 292-5390
Facsimile: (212) 292-5391
E-mail: mail@ipcounselors.com

*Attorneys for Plaintiff*
*Rovio Entertainment, Ltd.*

Steven M. Abbott
State Bar No. 00797825
Federal I.D. No. 9027
2727 Allen Parkway, Suite 1675
Houston, Texas 77019
Telephone: (713) 467-1669
Facsimile: (713) 467-4936
E-mail: abbottsteven@hotmail.com

*Attorneys for Plaintiff*
*Rovio Entertainment, Ltd.*

Dean M. Fuller
State Bar No. 07516550
Law Office of Dean M. Fuller
5001 Spring Valley Road
1000 Providence Towers East
Dallas, Texas 75244
Telephone: (972) 934-4138

Facsimile: (972) 934-4140
E-mail: deanfuller@fullerlaw.net

*Local counsel for Plaintiff*
*Rovio Entertainment, Ltd.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 6, 2014, I electronically filed the above and foregoing document with the Clerk of this Court using the CM/ECF filing system, and that service of a true and complete copy of this document upon all parties through their respective counsel of record, who are known Filing Users, was automatically accomplished through electronic Notice of the filing of this document. On this date I also provided true and correct copies of this document to all parties through their respective counsel of record via email addressed as follows:

**Robert J Clary**
Owens Clary & Aiken LLP
700 N Pearl St, Suite 1600
Dallas, TX 75201
214/698-2102
214/698-2121 (fax)
rjclary@oca-law.com
*ATTORNEY FOR DEFENDANTS* BG Traders LLC; Bangshi Gopal Shrestha; Vania Jewelry LLC; and Meishu Jin

**Aaron P Peacock**
Gagnon, Peacock & Vereeke, P.C.
Highland Park Tower, Second Floor
4245 N Central Expressway
Suite 250
Dallas, TX 75205
214-824-1414
214/824-5490 (fax)
aaron@gapslaw.com
*ATTORNEY FOR DEFENDANTS* AM Wholesale Inc.; Amafhh Center Inc.; Amafhh International Inc.; Ali Raza Ravjani; and Mohsin Raza Ravjani

**James A Pikl**
Scheef & Stone LLP
2601 Network Boulevard
Suite 102
Frisco, TX 75034
214/472-2100
214/472-2150 (fax)
jim.pikl@solidcounsel.com
*ATTORNEY FOR DEFENDANT* Roghan Etux Sangita Sthapit

**Steven T Polino**
Law Offices of Steven T Polino PLLC
3216 Prince Court
Bedford, TX 76021
817/992-6359

817/283-1182 (fax)
stplaw@sbcglobal.net
*ATTORNEY FOR DEFENDANTS* Assured Vending LLC and Discount Arcade Distributing Inc.

**Jade Marie Rozell-Ruiz**
Stanley & Associates PLLC
811 S Central Expressway
Suite 442
Richardson, TX 75080
214/570-4944
214/540-4561 (fax)
jade@stanley-lawfirm.com
*ATTORNEY FOR DEFENDANTS* DM Merchants Ventures Inc.; Xiao Dong Zhu; Yanagi Trading LLC; and Yuanli Tang


New York, New York                    By:     s/ *Ashly E. Sands*
                                              Ashly E. Sands
                                              60 East 42nd Street, Suite 2410
                                              New York, NY 10165
                                              Telephone: (212) 292-5390
                                              Facsimile: (212) 292-5391
                                              E-mail: mail@ipcounselors.com
                                              *Attorney for Plaintiff*